## JOLLY v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KENTUCKY.

No. 233. Submitted April 28, 1898. — Decided May 9, 1898.

Postage stamps belonging to the United States are personal property, within the meaning of Rev. Stat. § 5456, which enacts that " Every person who robs another of any kind or description of personal property belong-

ing to the United States, or feloniously takes and carries away the same, shall be punished by a fine of not more than five thousand dollars, or by imprisonment at hard labor not less than one year nor more than ten years, or by both such fine and imprisonment," and may be made the subject of larceny.

THE case is stated in the opinion.

*Mr. Robert S. Todd* for plaintiff in error.

*Mr. Assistant Attorney General Boyd* for defendants in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The plaintiff in error seeks to reverse his conviction of the crime of stealing certain postage stamps on the 25th day of April, 1894, being the property of the United States, upon which conviction he was sentenced to be imprisoned for the term of two years. The indictment against him was found in the District Court of the United States for the District of Kentucky, Owensborough Division, in the June term, 1895, and contained five counts. It was drawn under section 5456 of the Revised Statutes. The first count alleged, in substance, that on the 25th day of April, 1894, at Hardinsburg, in the district mentioned, the defendant did feloniously steal, take and carry away from a building then and there used as a post office building by the United States, certain postage stamps of the United States, of various denominations mentioned in the indictment, and of the value named ($163.12), and which stamps were then and there the personal property of the United States of America.

The second count was the same, except that it alleged the stealing to have been from the possession of Thomas McClure, the postmaster, etc.

The third and fourth counts alleged the stamps to have been the property of the Post Office Department, and the fifth count alleged that he had the stamps in his possession with intent to convert to his own use, the same having there-

tofore been stolen from the United States by some other person, which the defendant well knew.

Upon being arraigned, the defendant filed a demurrer to each count of the indictment, which was sustained as to the third and fourth counts and overruled as to the others.

His counsel upon the trial again raised the question as to the validity of the first and second counts, duly excepting to the decision of the court in holding that he might be convicted upon either of them.

The judge charged the jury that the defendant could not be convicted under the first, second and fifth counts together; that if convicted upon either the first or second count, or both, he could not be convicted under the fifth.

He was found guilty as charged in the first and second counts, but the jury said nothing in their verdict as to the fifth count.

The same objections to the conviction that were taken below are now urged upon us by counsel for the plaintiff in error as grounds for the reversal of the judgment.

Section 5456 of the Revised Statutes, under which the indictment was drawn, reads as follows :

"Every person who robs another of any kind or description of personal property belonging to the United States, or feloniously takes and carries away the same, shall be punished by a fine of not more than five thousand dollars, or by imprisonment at hard labor not less than one nor more than ten years, or by both such fine and imprisonment."

The contention on the part of the plaintiff in error is, that in order to sustain an indictment under this statute (1) there must be a felonious and forcible taking of personal property ; and (2) the property must be the subject of larceny, which postage stamps belonging to the Government are not.

(1) There are two distinct offences mentioned in the statute.

One is the offence of robbery, the legal and technical meaning of which is well known. It is a forcible taking, or a taking by putting the individual robbed, in fear.

There is also set forth in the statute the crime of feloniously taking and carrying away any kind or description of personal

property belonging to the United States. This is a distinct and separate offence from that of robbery. If the statute required the taking to be forcible in all cases, the language providing against the felonious taking and carrying away of the personal property of the United States would be surplusage, the forcible taking being already implied and included in the use of the word " rob." But in addition to robbery, the offence of feloniously (not forcibly) taking the personal property of the United States is created. The indictment herein comes under the latter head.

(2) The objection that the postage stamps are not the subject of larceny while in the possession and being the property of the United States, we think is also untenable.

The language used in the statute is much broader and covers more ground than the common law definition of larceny, and it is also more comprehensive than the statute of 1790. Act of April 30, 1790, c. 9, 1 Stat. 112, 116. " Any kind or description of personal property " is an exceedingly broad designation. It is difficult to imagine language which would be plainer in its meaning, or which would more certainly embrace property such as is the subject of this indictment.

Postage stamps while in the hands of the Government, ready to be sold and used, are most surely its personal property. Although section 5413 provides that the words " obligation or other security of the United States " shall be held to mean, among other things, " stamps and other representatives of value, of whatever denomination, which have been or may be issued under any act of Congress," yet that language does not preclude the stamps from being the personal property of the United States before they are issued and sold by it. The section in question (5413) precedes those sections relating to the forgery or counterfeiting of United States obligations or securities, national bank notes, letters-patent, certificates of entry, public records and the like, and it includes stamps or any obligation of the United States that may be the subject of forgery or counterfeiting, but it does not thereby exclude postage stamps, before they are issued and while in the possession of the Government, from the

general designation of personal property belonging to the United States. ,

There is, while the stamps are in the possession of the Government, some intrinsic value in the stamps themselves as representatives of a certain amount of cost of material and labor, both of which have entered into the article in the process of manufacture entirely aside from any prospective value as stamps. They are incapable of being distinguished, the one from the other. All postage stamps of the same denomination are alike, and the moment they are taken from the possession of the Government they are valuable in proportion to their denomination and are subject to use, the same as if they had been purchased, because it is wholly impossible for the Government to detect or identify any particular stamp as having been stolen or otherwise fraudulently put in use. Once out of the possession of the Government they may be used for their full value to obtain carriage by mail of the article to which they are affixed. There is every reason therefore why such stamps should be regarded as personal property even while in the possession of the Government. They become valuable to the amount of their denomination the very instant they get into the possession of another. They are not mere obligations, but a species of valuable property in and of themselves the moment they are out of the possession of the Government.

The case of the *United States* v. *Davis*, 5 Mason, 356, 362, 365, was an indictment for stealing bank bills, a promissory note, etc., and it was founded upon a different statute in which very different language was used. The act under which that indictment was found was chapter 9 of the laws of 1790, (1 Stat. 112, 116,) and section 16 thereof provided "that if any person . . . shall take and carry away, with intent to steal or purloin, the personal goods of another," etc. It was held by Mr. Justice Story that the meaning of the words "personal goods of another" was to be determined by a resort to the common law as furnishing the proper rule of interpretation, and he held that in the strict sense of the common law "personal goods" are goods which are movable, belong to, or are the

property of some person, and which have an intrinsic value; that bonds, bills and notes, which are choses in action, are not esteemed by common law goods whereof larceny may be committed, being of no intrinsic value, and not importing any property in the possession of the person from whom they are stolen, but only evidence of property. Therefore, strictly construing the statute as a penal one, the court held that the analogy of the common law in respect to larceny might well furnish the proper rule for decision, and that personal goods in the sense of the act under consideration did not embrace choses in action. Since that statute was passed the common law definition of larceny has been largely extended by statute in almost every State in the Union.

The statute from which section 5456, Revised Statutes, was taken was passed March 2, 1867, c. 193, 14 Stat. 557, and the same all-embracing language is found therein. "Any kind or description of personal property" is the phrase used. It was no doubt passed to enlarge the common law in relation to the subjects of larceny. Although at common law written instruments of any description were not the subject of larceny, as not being personal goods; that is, movables having an intrinsic value, yet although such instruments could not in strictness be stolen, the paper or parchment on which they were written might be, and prosecutions for petty thefts of this description frequently took place in England. *People* v. *Loomis,* 4 Denio, 380; 3 Chit. C. L. 932; 2 Russ. on Crimes, 74 to 80; *Rex* v. *Clark,* R. & R. 181; *Vyse's case,* Ry. & Mood. 218; *Reg.* v. *Morris,* 9 C. & P. 347; *Reg.* v. *Rodway,* 9 C. & P. 784; *Rex* v. *Bingley,* 5 Id. 602; *Rex* v. *Mead,* 4 Id. 535. To make stamps, while unissued and in the hands of the Government, the subject of larceny is not, therefore, any very great departure from the general doctrine of the common law.

Counsel for plaintiff in error claims that the offence, as shown by the evidence in this case, assuming it to be true on the part of the United States, is brought within section 5453 of the Revised Statutes in relation to secreting, embezzling, taking or carrying away any property, etc., stamped in whole or in part, and intended to be issued in behalf of the United

States, and he also argues that the indictment is wholly defective under that section.

Whether the facts might or might not warrant an indictment under such section, it is not now necessary to decide, for the reason that we hold the indictment good under section 5456, because we regard postage stamps belonging to the United States as being included in the section in question as personal property, and therefore the subject of larceny.

The action of the jury in returning a verdict of guilty upon the first and second counts and being silent as to the fifth was equivalent to a verdict of not guilty as to that count. See cases cited by Mr. Justice White in *Selvester* v. *United States*, 170 U. S. 262.

For the reasons already given, we think the judgment is right, and that it should be

*Affirmed.*