**UNITED STATES of America,**
**Appellee,**

v.

**Arthur DEHAR, Appellant.**

**No. 240, Docket 31787.**

United States Court of Appeals
Second Circuit.

Argued Dec. 13, 1967.

Decided Jan. 11, 1968.

Leon B. Polsky, New York City (Anthony F. Marra, New York City, New York Legal Aid Society, of counsel), for appellant.

Paul K. Rooney, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., Roger J. Hawke, Asst. U. S. Atty., of counsel), for appellee.

Before KAUFMAN, ANDERSON and FEINBERG, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The narrow but troublesome issue presented on this appeal is whether the trial judge properly refused to submit the question of entrapment to the jury. Arther Dehar was found by a jury to be guilty of concealing and transporting approximately 82 kilograms of marijuana in violation of 21 U.S.C. § 176a and was sentenced to 5 years' imprisonment.[1] In his opening statement Dehar's counsel made it crystal clear that Dehar did not deny having committed the substantive offense but that his defense to the charge would be that he was entrapped into committing it. For the reasons we shall set forth, we hold that the trial judge erroneously refused to submit the defense of entrapment to the jury.

The government's case consisted primarily of the testimony of 2 agents of the Federal Bureau of Narcotics. In substance, they testified that during the evening of September 21, 1966, a man later identified as Dehar telephoned a government informer, Harvey Steinberg, at an unlisted Bureau of Narcotics telephone to arrange for a delivery of marijuana later that night.[2] During the course of the conversation, Dehar stated that he would deliver 45 kilos and that he was working at a profit of between $10 and $15 a kilo. Because Steinberg told Dehar that the "customer" would not trust Dehar, it was agreed that Steinberg was to examine the drugs in Dehar's automobile before the "customer" would complete the sale. Later that

night, the agents testified, Steinberg met Dehar, entered his station wagon and removed several "shiny" packages from a large trunk lying on the rear deck. Soon after Steinberg left the station wagon, Dehar was arrested and approximately 86 kilograms of marijuana were found in the car. Appellant took the stand in his own behalf and admitted believing that the trunk contained marijuana and that he had called Steinberg on September 21. He also stated that sometime earlier he had been approached by one Henry Fillet[3] who told him that he had some marijuana for sale. According to Dehar, he and Steinberg had been roommates but in the early summer of 1966 he "threw him [Steinberg] out because he was too much trouble." He claimed that Steinberg began calling him during August and September to ask for drugs and that he told Steinberg he would let him know if any became available only "because it was a nice way of getting rid of him." Under cross-examination, however, Dehar stated that he "might have" telephoned Steinberg on September 9 and that "[w]hen he asked me whether I had anything [marijuana] I said, 'Yes, pick it up next week.'"

In rebuttal, the government called Steinberg as its witness and he confirmed the account given by the narcotics agents with respect to the activities on the evening of September 21. He "would say," Steinberg testified, that he and Dehar parted on friendly terms when he left their shared apartment although he conceded that he did not leave of his own volition. And, it was his version that the first time he spoke to Dehar (after leaving the apartment) was on September 9 when Dehar phoned to ask him if he was interested in purchasing some marijuana. But, on cross-examination, Steinberg admitted that 2

1. Dehar had also been indicted with two others on a charge of conspiracy to conceal and transport marijuana in violation of 21 U.S.C. § 176a, but on the government's motion the conspiracy count was severed and Dehar proceeded to trial on the substantive violation.

2. A tape recording of the conversation was later introduced into evidence. The appellant does not question the propriety of the recording or its receipt in evidence.

3. Henry Fillet was one of the alleged co-conspirators with whom Dehar was indicted.

days before hearing from Dehar he [Steinberg] had been arrested for the sale and possession of hashish (a purified version of marijuana) and that the following day he was "offered the opportunity * * * to work off the bust."

After this episode at the trial, Dehar once again took the stand and testified that Steinberg had caused him a great deal of difficulty, was a source of concern to him [Dehar] and that he was "sort of afraid of what he [Steinberg] could do." Moreover, he claimed that Steinberg had threatened him "that if I ever did anything against them [sic] he had some people that would take care of me." And, this time appellant stated unequivocally that Steinberg had called him on September 9; moreover, that Steinberg continued to call him throughout the month of September. In sum, Dehar's later testimony was that Steinberg placed the first call that led to the September 21 transaction and that he went along with the sale only because Steinberg "persisted in calling me [Dehar] * * * [and] I was still afraid of him."

We note at the outset that the question before us is the reverse of that presented in United States v. Bishop, 367 F.2d 806 (2d Cir. 1966); Dehar did not deny the acts alleged to constitute the crime. Furthermore, counsel made clear in his opening and closing remarks as well as in his requests for jury instructions that Dehar maintained that he had

been entrapped. The sole issue for our determination, therefore, is whether there was sufficient evidence to compel the submission of the entrapment defense to the jury.

Although the cry "I was entrapped" is heard with mounting frequency in narcotics prosecutions, it is a defense whose "meaning, purpose, and application, are problems that have sharply divided [the Supreme Court]," Lopez v. United States, 373 U.S. 427, 434, 83 S.Ct. 1381, 1385, 10 L.Ed.2d 462 (1963).[4] It is not surprising, therefore, that a number of lower courts have commented on the many confusions and subtle distinctions that—perhaps unnecessarily—permeate the area. See, e. g., Kadis v. United States, 373 F.2d 370 (1st Cir. 1967). But, we are fortunate that, in this instance, we need not concern ourselves with those complex problems. Our analysis can well begin with Judge Learned Hand's oft-quoted statement on the first appeal in United States v. Sherman, 200 F.2d 880, 882–883 (2d Cir. 1952), that the entrapment defense presents two questions of fact:

"(1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense? On the first question the accused has the burden; on the second the prosecution has it."[5]

4. In Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), eight Justices voted to sustain the defense of entrapment but were sharply divided as to the rationale. The majority accepted the concept that an entrapped defendant is implicitly excepted from the operation of the statute imposing criminal penalties on his behavior; the minority reasoned that the defense was needed for the protection of the court's own functions as a temple of justice. In Sherman v. United Staes, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the Court split along similar lines with the majority refusing to re-examine the doctrine of Sorrells, Id. at 367–378, 53 S.Ct. 210. It has

been suggested that in the view of the Supreme Court majority, the entrapment defense has two distinct objectives: "to prevent prosecution of persons who were innocent until corrupted by government agents, and to preclude certain police conduct whether the particular defendant was innocent or not." Kadis v. United States, 373 F.2d 370, 372 (1st Cir. 1967).

5. We note that in Kadis v. United States, supra, the First Circuit has rejected Judge Hand's analysis of the entrapment defense in terms of inducement and predisposition in favor of a formulation that would submit to the jury a single "ultimate question of entrapment." 373 F.2d at 374. And, it also suggested that in our

■ Judge Hand's use of the word "induce" in formulating the first question has led some courts mistakenly to equate "induce" with "entrap," see Notaro v. United States, 363 F.2d 169, 174 (9th Cir. 1966), or to employ "induce" to encompass the crucial issue of improper pressure, see United States v. Pugliese, 346 F.2d 861, 863 (2d Cir. 1965). We have recently reiterated, however, that "the first element goes simply to the Government's initiation of the crime and not to the degree of pressure exerted." United States v. Riley, 363 F.2d 955, 958 (2d Cir. 1966). And, it is clear to us that crediting the testimony most favorable to Dehar—which we are required to do in considering whether the evidence was sufficient to take the issue of entrapment to the jury—there was sufficient evidence from which the jury could reasonably have inferred that Steinberg initiated the September 21 transaction in order to gain favor with the government in trying to "work off the bust." While it is true that there is conflicting evidence as to whether Dehar or Steinberg initiated the September 9 telephone call, this conflict, without more, does not authorize the court to resolve the factual issues related to the entrapment defense. The jury is the body that must decide which of the versions is credible. And, it is not wholly inconceivable that it might have chosen to believe that Dehar was induced to commit the crime.

On the second issue raised by the entrapment defense—the accused's so-called "propensity" to commit the crime —we agree with the government that there was sufficient evidence in the record to support the conclusion that Dehar was "ready and willing" and was "awaiting any propitious opportunity to commit the offense." During the telephone conversation of September 21 Dehar gave no indication that he was less than anxious to complete the deal and his testimony on rebuttal seemed calculated to meet the hornbook requirements of the entrapment defense; thus, it is understandable that the trial judge viewed his claims with a somewhat jaundiced eye. But, we attempted to make clear in *Riley,* that once the government's inducement or initiation of the crime was put in issue, the judge was required to charge the jury on the law of entrapment unless the accused's propensity was established by "uncontradicted proof." 363 F.2d at 959. Moreover, our Brother Friendly stated that "the production of any evidence negating propensity, whether in cross-examination or otherwise, requires submission to the jury, however unreasonable the judge would consider a verdict in favor of the defendant to be." Id. at 959. Cf. Lutfy v. United States, 198 F.2d 760, 762 (9th Cir. 1952). It is apparent to us that there was evidence negating propensity; had the jury believed Dehar it could have concluded that he joined in the September 21 transaction since he feared Steinberg because, Dehar said, he had pressed him for marijuana. Nor, can we overlook, in this connection, Steinberg's admission that he did not leave the shared apartment of his own volition. Furthermore, neither we nor the trial judge have the omniscience to divine what the jury would have thought of the coincidence of telephone calls between Dehar and Steinberg suddenly commencing one day after Steinberg was offered an opportunity to "work off [his] bust," particularly since they apparently had not seen or spoken to each other for some time before that.

■■ In sum, we find that there was sufficient evidence on the issue of entrapment so that it should have been submitted to the jury after an appropriate charge on the law. As long as the view of the majority in Sorrells v. United

recent decision in United States v. Riley, 363 F.2d 955 (2d Cir. 1966), we partially recognized that consideration of inducement as a separate issue serves no useful purpose. Since the parties have not briefed or argued the question and its resolu-

tion is not necessary for the disposition of the instant appeal, we need not reconsider Judge Hand's analysis in *Sherman.* Cf. Lopez v. United States, 373 U.S. 427, 436–437, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963).

States, 287 U.S. 435, 53 S.Ct. 210 (1932), prevails, the factual issues related to the defense of entrapment are for the jury to resolve.

We can well understand the reluctance of a trial judge to repeat in case after case the rather tedious, complex and tortuous entrapment charge, particularly where he believes the defense is concocted and the defendant is clearly not innocent. But, there is no escape from this where contested factual issues are presented. To follow any other course will mean either costly retrials or an obviously guilty defendant avoiding a just judgment.

Reversed.