**UNITED STATES of America,
Appellee,**

v.

**David Bernard BARASH, Defendant-
Appellant.**

**No. 45, Docket 32225.**

United States Court of Appeals
Second Circuit.

Argued Sept. 20, 1968.

Decided April 9, 1969.

Certiorari Denied Oct. 13, 1969.
See 90 S.Ct. 86.

Louis Bender, New York City (Lloyd A. Hale, New York City, of counsel), for defendant-appellant.

David M. Dorsen, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, John E. Sprizzo, Asst. U. S. Atty., of counsel), for plaintiff-appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

MOORE, Circuit Judge:

This is an appeal by David Bernard Barash from a judgment of conviction entered against him in the district court, after a ten-day jury trial. The case was before the district court upon remand after this court reversed a previous conviction of Barash at a first trial. United States v. Barash, 365 F.2d 395 (1966).

The indictment named Barash, a certified public accountant and attorney, in 32 counts relating to 16 transactions in which he was alleged to have made im-

proper payments to several Internal Revenue Service agents in return for favorable adjustments in connection with audits of personal income tax returns of Barash's clients. Counts 1 through 12 charged him with offering, promising and giving bribes to 3 agents with intent to influence office audit examinations in violation of the prior 18 U.S.C. § 201, and counts 13 through 16 charged him with the same crime in violation of the present statute, 18 U.S.C. § 201(b).[1] Counts 17 through 20 charged a violation of 18 U.S.C. § 201(f), which makes it a crime to pay a public official a sum of money "for or because of any official act performed or to be performed" by them. Counts 21 through 32 charged Barash with aiding and abetting[2] the violation of 26 U.S.C. § 7214(a) (2), which proscribes revenue officers from knowingly demanding or receiving sums of money except as prescribed by law.

At the first trial, Barash was acquitted on counts 7, 13, 15, 17, 19 and 27, relating to alleged unlawful payments to Internal Revenue Service agents Montello and Wolf, but was convicted on the remaining counts, which concerned agents Clyne, DeSibio and Coady. He was sentenced to concurrent terms of imprisonment of a year and a day on each count. On appeal, this court reversed and remanded for a new trial because hearsay testimony was erroneously admitted, cross-examination was improperly restricted and the charge to the jury was in error in two respects, namely, (1) threat of economic harm as an

element of intent, and (2) payment alone sufficient to establish intent.

At the second trial, there were thirteen pairs of counts representing, and numbered identically as, those upon which Barash had been convicted at the first trial, charging unlawful payments to Clyne, DeSibio and Coady. On October 21, 1967, the jury returned a verdict of guilty on counts 8, 10, 18, 20–26 and 28–32. On the other counts the jury either returned a verdict of not guilty, or reported that it was unable to agree. Barash was sentenced to concurrent terms of imprisonment for nine months and a fine of $1,000 on each of counts 21–26 and 28–32; to terms of imprisonment of five years, execution suspended, with a fine of $2,500 on each of counts 8 and 10; and to terms of imprisonment of two years, execution suspended with probation of five years, and a fine of $2,500 on each of counts 18 and 20. The total fine was $21,000.

*The Facts*

The Government's case against Barash consisted of the testimony of agents Clyne and DeSibio, who had pleaded guilty to charges against them in the indictment, and that of Coady, a Government undercover agent. Clyne, involved in all but three of the transactions resulting in convictions, gave substantially the same testimony at the second trial that he had given at the first.[3] He testified that Barash paid him a total of $225 for false audits in 1960, followed by lesser sums in each of the succeeding

---

1. Counts 13 through 16 relate to transactions which took place after January 21, 1963, when the present statute came into force. The present § 201(b) contains no change of substance from the prior § 201. See United States v. Barash, 365 F.2d 395, 398, f. 1 (2d Cir. 1966).

2. 18 U.S.C. § 2(b) reads: "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

3. The opinion in the first Barash appeal summarized the nature of the transactions as follows:

Barash would inform Clyne of clients who had received "call-in" letters instructing them to appear for audit of their returns before the group of agents that included Clyne. In violation of office procedures Clyne would obtain the returns and related papers from his supervisor's file and assign the audits to himself. Barash would suggest relatively small disallowances in unsubstantiated deductions for travel and entertainment expenses, and would offer Clyne compensation for thus passing the returns. 365 F.2d at 398.

three years. DeSibio gave testimony as to two similar transactions in 1961 involving payments of about $25 each. Coady, the undercover agent, testified that he met Barash in 1963 upon an introduction by a former Internal Revenue Service auditor, Miss Jeanne Lupesco,[4] and upon the request of Barash assigned an audit to himself, contrary to normal office procedure, and approved certain deductions without any inquiry as to their accuracy. A few minutes later, according to Coady's testimony, Barash gave him an envelope containing $50.

Appellant's defense consisted of his own testimony and that of some additional witnesses who testified as to his good reputation. Barash, on the stand, admitted that he gave money to Clyne on several occasions[5] but said that those transactions were Christmas gifts having nothing to do with the audits. The money, explained Barash, had been given merely to create a more pleasant working atmosphere. In response to the testimony of DeSibio, Barash said that he had taken DeSibio to lunch upon the conclusion of a normal audit. Both Clyne and DeSibio, Barash suggested, had implicated him to gain mitigation of sentences they were to receive for crimes arising from these and other transactions. And finally, Barash testified that his $50 payment to Coady was wholly unrelated to the audit performed, but was given out of sympathy induced by Coady's indication that he was in debt and was soon to go to a marine training camp.

*Defense of Economic Coercion*

In the first of many claims of reversible error, Barash asserts that it was error for the trial judge to exclude the defense of economic coercion from the jury's consideration of the counts under 26 U.S.C. § 7214(a) (2) and 18 U.S.C. § 201(f), the provisions covering unlawful payment of gratuities. In the first appeal of this case we said:

> We think that if a government officer threatens serious economic loss unless paid for giving a citizen his due, the latter is entitled to have the jury consider this, not as a complete defense like duress but as bearing on the specific intent required for the commission of bribery. Cf. United States v. Miller, 340 F.2d 421, 425 (4th Cir. 1965). While it is arguable that this is also true with respect to giving gratuities under 18 U.S.C. § 201(f), or to being an accessory to the receipts prohibited by 26 U.S.C. § 7214(a), offenses which have no requirement of specific intent, see United States v. Irwin, [354 F.2d 192, 197 (2d Cir. 1965), cert. denied, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966)], and carry a significantly lower punishment, we incline to the view that as to these offenses economic pressure is irrelevant. 365 F.2d at 401–402.[6]

■ Although criminal intent is a necessary element for conviction under the gratuity counts, no specific intent is required. In this case, accepting Barash's version of the facts, the payments were received by the auditors "otherwise than as provided by law for the proper discharge of official duty," as provided for in § 201(f).[7] In measuring intent, it matters not whether the payments were made because of economic duress, a desire to create a better working atmosphere, or appreciation for a speedy and favorable audit.

---

4. Coady's testimony concerning this introduction was substantially the same as that of Miss Lupesco. Miss Lupesco also testified that in 1958 she had conducted an audit favorable to Barash's client and was thereafter given $80 in cash by Barash.

5. Barash testified that he gave Clyne Christmas gifts of $25 or $50 in 1960, 1961 and 1962, and that he gave another $50 to Clyne in January, 1963.

6. Two footnotes, reciting relevant portions of § 201(f) and § 7214(a) have been omitted. The text of these statutes is noted, *infra*.

7. Substantially identical language in § 7214 (a) (2) reads: "except as by law prescribed, for the performance of any duty * * *."

■ It is somewhat of a misnomer to refer to "the defense of economic coercion"; rather it (economic coercion) is related to the ultimate fact conclusion of intent. The trial court did not "rule out" such coercion as Barash argues. Specifically, the trial court told the jury that it could consider Barash's version of Clyne's coercive approach as "pressure" and that it might "consider the conduct of Clyne as bearing on the issue whether the defendant in making such payment or payments had the intent to influence official action, which is an essential element of the offense under old Section 201 and present Section 201(b)."

The trial court can scarcely be held in error for following our opinion in which we said that the offenses specified in 18 U.S.C. § 201(f) and 26 U.S.C. § 7214 (a) "have no requirement of specific intent." The court was entitled to accept our "view that as to these offenses economic pressure is irrelevant." 365 F.2d at 402. The charge instructed that the receipt (by Clyne and DeSibio) of compensation or reward must have been with "criminal intent" and that Barash to have aided and abetted must have "associated himself with the criminal venture, that he participated in it as something he wished to bring about, that he, by his act or acts, endeavored to make it successful."

Appellate courts will never know how much or how little a jury is able to absorb from the reading of stilted indictments and adverbial statutes, from the specification of a series of essential elements necessary to convict and the "boilerplate" forced upon trial judges by time-honored and cumulative decisions. Refuge must be sought in trying to appraise the charge as a whole and to decide whether the jury would have been able to place the template of essential elements upon the factual mat laid out before it and thus determine a violation of the law. Such an approach leads to the belief that, if the jury had wished to accept Barash's version that he was the innocent victim of Clyne's economic pressure, the charge adequately gave it this choice as to the counts where it could have been a factor in reaching their determination.

### Entrapment by Coady

■■ Barash next contends that the trial court erroneously failed to instruct the jury on the issue of entrapment in connection with his payment of $50 to undercover agent Coady. The fact that Barash made no offer or promise to pay Coady with respect to the audit, coupled with Coady's hints that he was about to go into the armed forces and was in debt establish, it is averred, inducement sufficient to support a charge of entrapment. But the most Barash could testify to was that Coady suggested a general financial need several days before the $50 was given. There was no evidence given sufficient to warrant a jury finding that Coady induced or initiated the crime, a finding necessary to satisfy the first element of entrapment. United States v. Dehar, 388 F.2d 430, 432–433 (2d Cir. 1968). In fact, Barash's own testimony completely refutes even any inference of attempted entrapment by Coady. Furthermore, Coady's conversations and behavior fall short even of constituting solicitation, which in itself is insufficient to constitute entrapment. United States v. Berry, 362 F.2d 756, 758 (2d Cir. 1966). Therefore, there was no error in the court's failure to charge as to entrapment.

### Testimony of Lupesco

■ Jeanne Lupesco, a former Revenue Service auditor, testified that Barash approached her in 1963 and inquired whether she "knew" anybody in a certain group to which Barash had been assigned for an audit. She responded by introducing Barash to Coady. In order to demonstrate what Barash meant by this question, and why Coady was selected, the Government asked her about her prior dealings with Barash. She answered that in 1958 Barash had given her $80 in return for a favorable audit. Barash contends that the admission of this testimony constituted reversible er-

ror, primarily because the Lupesco transaction was too remote from the 1963 transactions and thus had little probative value. Even though the jury was instructed that the Lupesco testimony was to be admitted as a prior similar act solely as to the Coady transactions, and even though he was not convicted on the Coady bribery count (16), Barash argues that prejudice arose because the testimony "was quite similar to DeSibio's" and may well have influenced the jury's verdict as to the count (20) on which he was convicted. But the evidence was probative on Barash's state of mind, by helping to explain the prior relationship between himself and Miss Lupesco and the meaning of his conversation with her. To be admitted such evidence " 'does not need to have strong, full, superlative, probative value, does not need to involve demonstration or to produce persuasion by its sole and intrinsic force, but merely to be worth consideration by the jury.' 1 Wigmore, Evidence (3d ed. 1940), 411." United States v. Kahaner, 317 F.2d 459, 471 (2d Cir.), cert. denied, 375 U.S. 836, 84 S.Ct. 74, 11 L.Ed.2d 65 (1963). Since the Lupesco testimony was properly admitted as to the Coady count (16), and since Judge Wyatt specifically limited the jury's consideration of this evidence to that count (which was eventually dismissed), the possible prejudice to Barash was minimal, and insufficient to establish grounds for reversal.

*Failure of Proof on DeSibio Counts*

Barash urges that the testimony offered was insufficient to justify a jury conviction on the counts involving De-Sibio. In support of this position he cites DeSibio's lack of certainty of the exact amount of the payments made to him or of the exact words used by Barash in suggesting improper payments, and confusing jury instructions. On appeal the evidence must be viewed most favorably to the Government. United States v. Aiken, 373 F.2d 294, 296 (2d Cir.), cert. denied, 389 U.S. 833, 88 S.Ct. 32, 19 L.Ed.2d 93 (1967). DeSibio testified that Barash had told him in words or substance, that "there would be something in it for him" if certain deductions were fraudulently allowed in 1961, and that he would not have prepared the same audit report if he had not believed that payment from Barash was forthcoming. Similar testimony was given as to a later transaction. This evidence satisfied the requisite elements of the bribery statutes here and *a fortiori*, the less demanding standard of 26 U.S.C. § 7214 (a) (2). Neither do we find merit in Barash's assertion that the trial judge confused the jury by giving a specific answer to a specific question about a portion of the charge rather than repeating the instructions verbatim.

*The Verdict*

After more than 13 hours of deliberation over a two-day period, the jury sent a statement to the trial judge that it was unable to reach a verdict on some of the counts. At that point of time, the court accepted the verdict of guilty on those counts as to which the jury had reached a conclusion [8] and in a supplemental charge asked the jury to deliberate further as to the remaining counts.[9] Following an additional three

---

8. Counts 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32.

9. The text of the charge is as follows:
As I took pains to emphasize to the jurors in my instructions on yesterday, you should never surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of other jurors or for the mere purpose of returning a verdict. But it is your duty as pointed out yesterday, and I point it out today, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to your individual judgment.
Each of you must decide these counts for yourselves but you should do so only after consideration of the evidence in the case with other jurors.
In the course of your deliberations you should not hesitate to reexamine your own views and change your opinion if you find that opinion to be erroneous.

hours of deliberation, the jury announced as to the remaining counts that it had reached a verdict on some counts but could not agree on the others.[10] Barash maintains that the trial court erred in giving what he characterizes as an *Allen* charge because it was coercive in and of itself, and in the context in which it was given. We disagree. The lower court's charge "made it sufficiently clear that a juror ought not abandon his personal conviction." United States v. Bilotti, 380 F.2d 649, 654 (2d Cir.), cert. denied, 389 U.S. 944, 88 S.Ct. 308, 19 L.Ed.2d 300 (1967). Furthermore, in view of the fact that more than three hours elapsed between the time of the charge and the jury's final verdict, the jury had ample time for thoughtful consideration which would negate coercion. United States v. Furlong, 194 F.2d 1, 4 (7th Cir.), cert. denied, 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352 (1952); United States v. Rao, 394 F.2d 354, 356 (2d Cir. 1968). Similarly, the claim that the supplemental charge was given prematurely has no merit. The jury here retired to deliberate at 11:25 a. m. and emerged at 11:30 p. m. to announce that it was unable to reach a unanimous decision on a number of counts. The court permitted the jury to go home to sleep. The next day the jury deliberated for two more hours before the court gave its supplemental charge. We think the trial court acted well within its proper discretion in so timing the charge.[11]

 Barash further attacks the verdict on the grounds that the trial judge improperly sent the jury back for further deliberations after accepting their verdict of guilty on a number of the counts. But no authority has been offered in support of this proposition. The cases cited by Barash hold that silence by the jury as to its verdict on particular counts in a multi-count indictment operates as an acquittal if the verdict is accepted by the trial judge and the jury is discharged.[12] This rule is designed to protect a defendant against double jeopardy in cases of retrial on the counts as to which the jury had been silent, and is inapplicable to the present situation. The practice of sending the jury back for further deliberations on unresolved counts has been followed in this Circuit since United States v. Cotter, 60 F.2d 689, 690–691 (2d Cir.), cert. denied, 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575 (1932), see also United States v. Frankel, 65 F.2d 285, 288–289 (2d Cir.), cert. denied, 290 U.S. 682, 54 S.Ct. 119, 78 L.Ed. 588 (1933), and we adhere to that practice here.

### Grand Jury Proceedings

 It is claimed that reversal of Barash's conviction is required because of lack of competent evidence before the grand juries which indicted him. The investigations leading to the indictments involved four grand juries and more than 40 witnesses. Clyne, DeSibio, Coady and Lupesco testified in person before one of these grand juries, giving testimony which incriminated Barash. The fact that an Internal Revenue Inspector, in the interests of economy of time, summarized this evidence before

10. Barash was found guilty on counts 8, 10, 18 and 20, not guilty on counts 1, 3 and 9, while no conclusion was agreed upon on counts 2, 4, 5, 6, 11, 12 and 14.

11. The minimum limits as to prematurity in this court appear to have been established in United States v. Kenner, 354 F.2d 780 (2d Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966), in which an *Allen* charge was given after the jury had deliberated for three hours and 45 minutes on seven counts of unlawful payments. That case was saved from reversal by the "barest margin," that margin provided by the trial judge's disclaimer of intention to "coerce" and by his expression of willingness to accept "the ultimate decision," whatever it might be. Id., 354 F.2d at 784.

12. Dealy v. United States, 152 U.S. 539, 542, 14 S.Ct. 680, 38 L.Ed. 545 (1894); Jolly v. United States, 170 U.S. 402, 408, 18 S.Ct. 624, 42 L.Ed. 1085 (1898); Green v. United States, 355 U.S. 184, 190–191, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844, 857 (2d Cir. 1965).

the grand jury which ultimately indicted Barash, was not improper. Though caveats have been issued against excessive use of hearsay before grand juries, its use has always been accepted where, as here, it is "demonstrably inconvenient to summon witnesses able to testify to facts from personal knowledge." United States v. Umans, 368 F.2d 725, 730 (2d Cir. 1966), cert. dismissed, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967); Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1955). In view of the array of grand juries involved here, and the inconvenience in recalling witnesses who had already testified from personal knowledge, the instant case is well within the *Umans* rule, *supra*. Furthermore, Barash's related contention, that there was reversible error because he was allegedly given the grand jury minutes only after Clyne left the witness stand, cannot prevail—particularly since the court offered to permit Clyne's recall.

*Trial Court's Charge*

█ Barash has alleged four errors in the court's charge to the jury. It is first asserted that the court erred in failing to instruct the jury that no inference could be drawn against Barash from the testimony of Clyne and DeSibio that they had pleaded guilty to charges of accepting unlawful payments. The trial judge had indicated that he would give the jury a compromise form of this instruction [13] but thereafter failed to do so. Barash, however, neglected to bring this omission to the court's attention and is, therefore, precluded from raising the point on appeal. Federal Rules of Criminal Procedure, Rule 30.[14]

Nor do we find that the jury should have been instructed that the audit was "completed" as soon as the auditor had agreed on the amount to be disallowed, or alternatively, that a "no change" report would be filed. Such an instruction theoretically would enable the jury to infer from a payment after "completion" of the audit that the payment was not made to influence the agent's act. But in view of the considerable evidence showing many continuing responsibilities of the auditor in connection with the audit after "completion," the trial judge was correct in charging otherwise.[15]

The third alleged error in the charge is that the trial court omitted the element of intent in its instructions to the jury on the counts under § 7214(a) (2). There is no basis for this contention. After clearly indicating that a necessary element for the conviction of Clyne and DeSibio was the receipt of money "with a criminal intent, that is, with bad purpose and motive," the court instructed the jury on Barash's intent as follows:

In order to find that the defendant aided or abetted another, in this case Clyne or DeSibio or both, to commit the offenses charged in these counts, you must find that the defendant, in some way, associated himself with the criminal venture, that he participated in it as something he wished to bring about, that he, by his act or acts, endeavored to make it successful.

This language has been specifically found proper, in United States v. Umans, supra, 368 F.2d at 728.

█ Finally, Barash contends that the trial judge failed properly to present his defense theory to the jury. He claims

---

13. The modified charge read:
There was testimony by Jeremiah Clyne and Erasmo DeSibio that they had pleaded guilty to certain counts of this indictment. You must not consider that testimony or any such pleas as indicating the guilt of the defendant.

14. The relevant portion of Rule 30 reads:
No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

15. The jury was charged as follows:
The relevance of the making of the payment before or after the audit or audit settlement is agreed to is simply the question whether the defendant, when the payment was made, believed that there was no official action to be taken by the public official * * *.

that his case was characterized as a mere denial of the testimony of the Government's witnesses, thus tending "to eliminate from consideration by the jury of [his] factual testimony of the circumstances of each audit." We have examined the record, however, and find that the factual summary was fair and accurate. Toward the beginning of his instructions, the trial judge said:

> Before considering the separate counts in the indictment I call the jury's attention to the fact that in these instructions I do not propose to review or summarize the evidence because the trial has not been so long as to make that necessary or desirable. You have heard the evidence presented and on yesterday you had the benefit of the closing arguments of counsel. If I mention any evidence in the course of these instructions it will be only for the particular purpose which will be indicated. You are to attribute no significance to my failure to mention any evidence.

Following brief summaries of the testimony of Clyne and DeSibio, the trial judge told the jury that he referred to "this testimony, * * * which you heard Mr. Barash deny from the witness stand, not to indicate any opinion as to whether you should accept that testimony * * * or not but solely in order to relate the government's evidence to the different counts and for no other purpose." Furthermore, the summary of Coady's testimony was followed by the statement to the jury that "[y]ou [the jury] heard Mr. Barash testify that he did give to Coady an envelope containing $50, but under circumstances different from those to which Coady testified, and with an intent different from that alleged in the indictment." We find no unfairness in these instructions to the jury.

*Duplication of Counts*

■ The concluding point for our consideration is Barash's contention that it was error to submit to the jury the counts under 18 U.S.C. former § 201 as well as the counts under 26 U.S.C. § 7214 (a) (2),[16] thus permitting the jury to convict on both counts. In the recent decision of United States v. Cohen, 387 F.2d 803 (2d Cir. 1967), we made clear the differences in the requirements for conviction under these sections:

> The aiding and abetting counts, unlike the bribery counts, require proof that the Internal Revenue Agent received a fee, not prescribed by law, for

16. 26 U.S.C. § 7214(a) (2) reads as follows:

§ 7214. Offenses by officers and employees of the United States.

(a) Unlawful acts of revenue officers or agents.—Any officer of employee of the United States acting in connection with any revenue law of the United States * * * (2) who knowingly demands other or greater sums than are authorized by law, or receives any fee, compensation, or reward, except as by law prescribed, for the performance of any duty * * * shall be dismissed from office or discharged from employment and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both.

18 U.S.C. § 201 reads as follows:

§ 201. Offer to officer or other person.

Whoever promises, offers, or gives any money or thing of value, or makes or tenders any check, order, contract, undertaking, obligation, gratuity, or security for the payment of money or for the delivery or conveyance of anything of value, to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, * * * with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both.

the performance of his duty. The bribery counts, unlike the aiding and abetting counts, require proof of a specific corrupt intent to influence official action. From a time standpoint alone, bribery required that money be given or promised with the intent to influence an official's decision before that decision is reached. *Id.* at 805–806.

The jury, concluded the court, might well have considered that Cohen did not possess the requisite intent for a bribery conviction, but that the payments were within the reach of the milder standard of § 7214(a) (2). And in fact the jury did convict Cohen only on the lesser counts, handing down acquittals on all charges of bribery. That case is therefore applicable here as to most of the counts, in which the jury came to similar conclusions. But Barash was convicted on the jury's first partial verdict of aiding and abetting DeSibio in the receipt of payments under § 7214(a) (2) (counts 28 and 30) and a few hours later convicted on the second partial ver-

dict of bribing DeSibio under 18 U.S.C. former § 201. Thus this case squarely presents the issue absent in *Cohen:* can a jury properly convict a defendant on both of these counts?

The question was recently raised in United States v. Umans, *supra,* but no answer was directly supplied. In *Umans,* the defendant had been indicted and convicted under the "paired" counts of § 201(b) and § 201(f),[17] and under the old paired counts of former § 201 and § 7214(a) (2). After rejecting the defendant's claim that the pairs of statutes contained contradictory elements of proof,[18] the court found that "the correct relationship between § 201(b) and § 201(f) is that § 201(f) is a lesser included offense of § 201(b). There is no reason to believe that Congress intended that there should be concurrent convictions and sentences under both sections, and we should not allow multiple convictions based on the same transactions even where the sentences are concurrent." *Id.* 368 F.2d at 730. The sentences on the § 201(f) counts were therefore vacated,

---

**17.** 18 U.S.C. § 201(b) reads as follows: § 201(b). Whoever, directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—
(1) to influence any official act; or
(2) to influence such public official or person who has been selected to be a public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or
(3) to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of his lawful duty * * shall be fined not more than $20,000 or three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.
18 U.S.C. § 201(f) reads as follows:

§ 201(f). Whoever, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official * * * shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

**18.** The court rejected defendant's claim that it was error to convict him of having committed "mutually inconsistent crimes," saying:
It appears that in both claimed inconsistent instances one of the two statutes requires proof of an extra element to convict, a specific intent to influence official action, while the other statute only requires proof that payment was made to an agent in a situation where no payment was necessary. There are not contradictory elements of required proof between the two statutes; only additional elements of proof. United States v. Umans, *supra,* 368 F.2d at 728–729.

with the court noting that there would be no effect upon the defendant's prison term since the vacated sentences were concurrent with those which remained in force. The court said nothing, however, on the question of whether such reasoning should apply with equal force to the § 7214(a) (2) convictions and sentences, each of which had a former § 201 counterpart, even though both "pairs" of counts had been treated equally in previous portions of the opinion.

Because of the concurrent jail sentences on all counts of which he was convicted, this point would be without practical effect on Barash except for the aggregate amount of the fines and his argument that the Supreme Court's decision in Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) requires reversal of the conviction on all counts rather than merely vacating the sentences on counts claimed to be duplicitous. Quite understandably, Barash does not desire to serve any jail term under any count. The jury, however, having seen and heard Barash and the guilty-pleading agents apparently rejected Barash's version of being pressured, of making Christmas gifts and tangibly showing monetary sympathy for Coady's financial plight. Therefore, condemned by his peers, Barash searches for technicalities in that most fertile field, the statutes themselves.

It is fair to assume that each statute was intended to have a purpose. In Congressional zeal to cover every situation, an appearance of duplicitousness often may be created. Specifically Barash was indicted in substance for bribery. The first twelve counts (transactions up to January 21, 1963) being under 18 U.S.C. § 201 and counts 13–16 (subsequent to January 21, 1963) under § 201(b). Simply stated these sections deal with the corrupt giving of money to a government employee with intent to influence him to commit a fraud on the United States. Another statute, 26 U.S.C. § 7214(a) (2) prohibits employees from receiving a reward for the performance of their duties. Thus the giver and receiver are enjoined.

In addition, however, the Congress wished to discourage the tempter who by his acts (aiding and abetting) would seek to break down the moral fibre of some not-too-resisting government employees. Thus Barash, as the tempter, quite apart from the direct bribe, would have been the cause of the commission of an entirely different crime by the employee, albeit the same money in both cases.

The jury was highly selective. Affirmative bribery was found as to DeSibio (counts 8 and 10). There were acquittals as to the Clyne transactions (counts 1, 3 and 9). For Barash's aiding and abetting Clyne and DeSibio to commit the crime of receiving, the jury returned guilty verdicts as to all the § 7214(a) (2) counts (counts 21–32).

The jury must have been satisfied of aiding and abetting guilt much earlier in their deliberations than on the bribery counts because, pursuant to the court's advice with respect to agreement on any count or counts, they reported during the morning of their second day that they had agreed on a guilty verdict as to the aiding and abetting counts (counts 21–26, 28–32). After further deliberation, guilty verdicts on bribery, 18 U.S.C.A. § 201, (counts 8 and 10) and payments for the performance of an official act, and 18 U.S.C. § 201(f) (counts 18 and 20) were returned.

From this result, Barash argues that the court should have charged the jury that it could not return a verdict of guilty on the bribery counts *and* the gratuity counts and "at the very least" he "was entitled to an order compelling the Government to elect to proceed on either the 201 counts or the 7214(a) (2) counts."

Decisions relating to lesser included offenses are not applicable because such a situation is not presented here. The elements of the two offenses proscribed in the bribery and gratuity statutes were by no means identical. Furthermore, this court has held that a "claim, that a payor to an internal revenue officer can-

not be an aider and abettor of the latter's violation of 26 U.S.C. § 7214(a), is foreclosed by United States v. Kenner, 354 F.2d 780, 785 (2d Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966)." 365 F.2d at 399 F. 3. The effect of *Kenner* was thus considered in the previous Barash appeal insofar as the Government's right to proceed under both statutes is concerned. Although Kenner had been acquitted on the bribery counts and convicted of aiding and abetting on the gratuity counts, there is no such inconsistency in the counts here as to require a different result. See also United States v. Cohen, 387 F.2d 803 (2d Cir. 1967).

Affirmed.

FRIENDLY, Circuit Judge, concurring (with whom FEINBERG, Circuit Judge, also concurs):

If the issue were *res nova*, I would have considerable difficulty in believing that an accountant who makes a payment to an internal revenue agent can properly be convicted for aiding and abetting the agent in violations of 26 U. S.C. § 7214(a) (2). The ALI Model Penal Code, which uses the term "accomplice" to encompass aiding and abetting, § 2.06(3), says in § 2.06(6):

"Unless otherwise provided by the Code or by the law defining the offense, a person is not an accomplice in an offense committed by another person if:

(b) the offense is so defined that his conduct is inevitably incident to its commission; * * *"

This principle would seem peculiarly applicable when the legislature has enacted other provisions, here 18 U.S.C. § 201, specifically directed against the payor, even though Congress decided in 1963 that these were not broad enough.

However, this court crossed that bridge in United States v. Kenner, 354 F.2d 780, 785 (2 Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966), the applicability of which we assumed on Barash's earlier appeal, 365

F.2d at 399 n. 3, see also United States v. Cohen, 387 F.2d 803 (2 Cir. 1967). I understand that the Government now "pairs" with § 201(b) only the lesser included offense of § 201(f), and Barash was convicted on two counts under old § 201 which would have amply supported the nine months imprisonment that he must serve. I am also not entirely persuaded that even if Barash could permissibly be held guilty as an aider or abettor of the agent's violations of 26 U.S. C. § 7214(a) (2), he could be convicted both of that and of a violation of § 201, see Milanovich v. United States, 365 U. S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), as he was on counts 8 and 28, and 10 and 30, but that also seems to be assumed by our previous decisions. Under the circumstances I do not feel warranted in seeking reconsideration of these issues by the full court.

In all other respects I agree with Judge Moore's careful opinion.