**UNITED STATES of America,**
**Appellee,**

v.

**James William HYNES, a/k/a James Burns, Appellant.**

**No. 445, Docket 33191.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 19, 1970.

Decided April 10, 1970.

Certiorari Denied June 29, 1970.
See 90 S.Ct. 2270.

---

Michael A. Bamberger, New York City (The Legal Aid Society, New York, N. Y.), for appellant.

James T. B. Tripp, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, Arthur A. Munisteri, Elkan Abramowitz, Asst. U. S. Attys., New York City on the brief), for appellee.

Before MOORE, FRIENDLY and HAYS, Circuit Judges.

MOORE, Circuit Judge:

This case presents a single issue on appeal: did Judge Weinfeld's delivery of an "Allen charge"[1] to the jury after

---

1. In Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), the jury in a criminal trial returned to court, after some deliberation, seeking further instructions because they were apparently unable to reach a verdict. The trial court delivered a lengthy supplemental charge, among other things urging the jury to make a renewed effort to overcome their differences. The jury subsequently returned a verdict of guilty.

On appeal to the Supreme Court, Allen protested the supplemental instruction. Upholding the conviction, the Supreme Court approved the trial court's charge after paraphrasing it in the following manner:

[a]lthough the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows, yet they should examine the question submitted with candor, and with a proper regard and deference to the opinions of each other; that it was their duty to decide the case if they could conscientiously do so; that they should listen, with a disposition to be convinced, to each other's arguments; that, if much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority. 164 U.S. at 501, 17 S.Ct. at 157.

Judge Weinfeld quoted excerpts from this paraphrase in a similar supplemental charge to the jury in the present case, see note 2, infra.

Over the years, trial judges confronted with apparently deadlocked juries have resorted to the language of the Allen decision in formulating a supplementary instruction urging the jury to renew attempts to arrive at a verdict. Thus a supplemental charge for this purpose is often referred to as an "Allen charge"; or in somewhat more graphic parlance, a "dynamite" or "blockbuster" charge because frequently, in deliberation subsequent to the supplemental instruction, the jury discovers that it is not hopelessly deadlocked after all. Appellant here argues that the emphasis on the majority view conveyed by the charge has the effect of improperly coercing minority jurors to give in to the majority, thereby permitting a conviction by what is in effect a majority vote.

it reported a deadlock violate the defendant's sixth amendment right to a verdict rendered by twelve individual and impartial jurors?

Hynes was convicted of having in his possession two counterfeit twenty-dollar bills and attempting to use one as payment for a drink in a tavern. All of the testimony related to this single incident and to Hynes's knowledge that the bills were counterfeit. The only substantial question presented to the jury was the issue of criminal intent. The defense was mainly that Hynes was uncommonly slow-witted, and was operating in an alcoholic fog at the time he tried to pay for the drink with the counterfeit bill. Counsel argued that defendant's actions and statements at the time of the incident demonstrated that he was incapable of scheming to pass bad money and therefore did not entertain the criminal intent required to convict. Each juror was thus asked to decide on the basis of testimony given in one day of trial whether or not he believed Hynes knew what he was doing.

Beginning deliberation the following day at 10:00 a. m., the jury asked once for additional instruction on the elements of the crime at 11:45 a. m. An hour later the jury reported a deadlock. Judge Weinfeld sent them to the jury room to wait for a few minutes while the marshal made lunch reservations; then they left to eat. Returning from lunch, the jury was instructed from the Supreme Court's opinion in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), with the addition of several cautionary phrases assuring that individual jurors were not being asked to vote against their "considered judgment." [2] This supplemental

---

2. Prior to the luncheon recess the court received a note from the jury as follows:
"The jury is deadlocked. Please give us instructions."
The court said:
"After lunch, I will instruct you further at that time."
Upon reconvening at 2:30 p. m., the court addressed the jury as follows:
"With reference to your note, I am going to suggest that you continue your deliberations.
"As I suggested this morning in my instructions to you, the case is an important one to the government. Equally it is an important one to the defendant. It is desirable, if a verdict can be reached, that this be done, both from the viewpoint of the government and of the defendant.
"This, of course, means only a verdict that reflects the conscientious judgment of each juror.
"This Court does not propose to ask—indeed, it does not have the right to ask or inquire—how you stand.
"It is normal for jurors to have differences. This is quite common. Frequently jurors, after extended discussion, may find that a point of view which originally represents a fair and considered judgment might well yield upon the basis of argument, further discussion and upon a further review of the facts and the evidence.

"Remember also—and I emphasize this—that no juror must vote for any verdict unless, after full discussion, consideration of the issues and exchange of views, this represents his or her considered judgment. Frequently further consideration may indicate that a change of original attitude is fully justified upon the law and the facts.
"To aid you, I will quote from a statement which is contained in a Supreme Court opinion when a jury sought to report a disagreement, and this is what the Court said:
'Although the verdict must be the verdict of each individual juror, they should listen with a disposition to be convinced of each other's argument; that, if the much larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of some men equally honest, equally intelligent as himself.
'If, upon the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of the judgment which was not concurred in by the majority.'
"That sets forth the viewpoint that you might well consider, but please remember that you review the evidence and you vote finally according to your conscientious judgment.

charge was completed at 2:35 p. m. The marshal reported a verdict to the court at 2:40 p. m.

This Court has consistently reaffirmed its approval of the supplementary charge to encourage a verdict in the face of an apparent deadlock. Recent examples are to be found in United States v. Barash, 412 F.2d 26 (2d Cir.), cert. denied, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969); United States v. Meyers, 410 F.2d 693 (2d Cir.), cert. denied, 396 U.S. 835, 90 S.Ct. 93, 24 L. Ed.2d 86, rehearing denied, 396 U.S. 949, 90 S.Ct. 371, 24 L.Ed.2d 255 (1969); United States v. Rao, 394 F.2d 354 (2d Cir. 1968); United States v. Bilotti, 380 F.2d 649 (2d Cir. 1967); United States v. Kenner, 354 F.2d 780 (2d Cir. 1965). Absent coercive circumstances outside the charge itself, we are satisfied that the so-called "Allen charge" does not unconstitutionally deprive a defendant of his right to a unanimous verdict rendered upon the conscientious consideration of twelve impartial jurors, notwithstanding the different view adopted within the last few months in two sister circuits. See United States v. Fioravanti, 412 F. 2d 407 (3rd Cir.), cert. denied sub nom. Panaccione v. United States, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); United States v. Wynn, 415 F.2d 135 (10th Cir. 1969) (both courts prospectively ruling that the charge could no longer be given in those circuits as a supplemental instruction to a deadlocked jury, but permitting its inclusion in the main charge).[3] The charge is no more than a re-statement of the precepts which the trial judge almost invariably gives to guide the jurors' deliberations in his original charge. Its function is to emphasize that a verdict is in the best interests of both prosecution and defense, and we adhere to the view that "[t]he considerable costs in money and time to both sides if a retrial is necessary certainly justify an instruction to the jury that if it is possible for them to reach a unanimous verdict without any juror yielding a conscientious conviction * * *, they should do so." United States v. Rao, 394 F.2d 354, 355 (2d Cir. 1968).

There were no aggravating circumstances in the present case such as foreknowledge of the numerical split, use of compromising language outside the Supreme Court statement in *Allen* or undue emphasis on the responsibility of the minority to suggest any coerciveness beyond the supplementary charge itself. Indeed the charge given by Judge Weinfeld was couched in the fairest possible language, assuming the acceptability of the deadlock-breaking procedure in its essence. However, appellant raises two questions with regard to timing in this particular case. Neither of them persuades us that the supplemental charge given here was unduly coercive.

First, we are reminded that the jury was allowed to deliberate for only two hours and fifty minutes before the "Allen charge" was given, and that we have previously indicated "minimum limits as to prematurity" of such a charge in excess of the time allowed here. See United States v. Barash, 412 F.2d at 32 n. 11. In the *Barash* footnote we referred to United States v. Kenner, 354 F. 2d 780 (2d Cir. 1965), in which we upheld an "Allen charge" given after the jury had deliberated for three hours and forty-five minutes. Suggesting that

"You may go back in the jury room. "As I said before, it is desirable from the viewpoint of both the government and the defendant. The government, of course, has an interest in seeing that the law is enforced. The defendant has gone through an ordeal, and apart from that is entitled to have a verdict, if it is possible, be it guilty or not guilty. I am sure that is his preference one way or the other without consulting him."

3. Also see Green v. United States, 309 F. 2d 852, 854 and ns. 1–3 (5th Cir. 1962) (dictum); Huffman v. United States, 297 F.2d 754, 759 (5th Cir.) (Brown, J., dissenting), cert. denied, 370 U.S. 955, 82 S.Ct. 1605, 8 L.Ed.2d 820 (1962); Andrews v. United States, 309 F.2d 127, 129 (5th Cir. 1962) (Wisdom, J., dissenting).

*Kenner* may have established the "minimum limits," we also observed that in *Kenner* the jury was responsible for a verdict on seven separate counts of unlawful bribery payments. Here there were only two counts, and essentially only one issue. We do not attempt to draw fine lines or circumscribe the trial court's discretion by declaring an arbitrary minimum time limit for all trials regardless of their complexity. We conclude only that Judge Weinfeld, in the exercise of his discretion, properly could have determined that after nearly three hours of deliberation on this straightforward evidence, the jury was honestly deadlocked and further instruction was required.

Appellant also calls to our attention the effect of the charge in this case. The jury returned with a verdict five minutes after the supplemental instruction was given. We do not deny the impact which the charge may have had; at the very least it apparently served to dissipate lingering doubts. Nevertheless the judge's emphasis of the necessity on the part of each juror to adhere to his own judgment clearly negates any mass coercion implication. Having consistently affirmed the rationale underlying such an instruction, we cannot logically take into account the fact that it produced quick results here in deciding whether or not it should have been given in the first place.

Finally it should be noted that appellant did not object to the supplemental charge. Although there was no opportunity to object before the charge was given, timely objection thereafter would have permitted the court to consider any curative language which appellant might have wished to suggest. Failure to object may have been trial strategy. Had the supplemental charge broken the deadlock in favor of acquittal, such strategy might well have been evidence of astute judgment.

Affirmed.