UNITED STATES of America

v.

**F. W. STANDEFER.**

**Crim. No. 77–139.**

United States District Court,
W. D. Pennsylvania.

May 24, 1978.

Blair A. Griffith, U. S. Atty., Pittsburgh, Pa., for plaintiff.

Harold Gondelman, Pittsburgh, Pa., for defendant.

## OPINION

KNOX, District Judge.

The defendant F. W. Standefer together with Gulf Oil Corporation and Joseph F. Fitzgerald was charged in a nine-count indictment with offenses in connection with giving fees, compensation or rewards not prescribed by law to Cyril J. Niederberger, a supervisory internal revenue agent who was case manager for the audit of Gulf Oil Corporation income tax returns for the years 1959 to 1964, inclusive. The evidence showed that Standefer and Fitzgerald were vice presidents of Gulf Oil Corporation, Standefer being vice president in charge of tax administration.

The indictment contained counts of two types. Counts 1, 3, 5, 7 and 9, the odd numbered counts, charged that Standefer together with Gulf Oil and Fitzgerald aided and abetted Niederberger in receiving fees, compensation and rewards not provided by law for the performance of his duties as internal revenue agent in violation of 26 U.S.C. § 7214(a)(2).[1] Specifically they were charged with giving him vacation trips and outings to such places as Pompano Beach,

---

1. "(a) Unlawful Acts of revenue officers or agents.—Any officer or employee of the United States acting in connection with any revenue law of the United States . . .

(2) who knowingly demands other or greater sums than are authorized by law, or receives any fee, compensation, or reward, except as by law prescribed, for the performance of any duty; or . . .

and Doral Country Club, both in Florida, Sea View Country Club in New Jersey, Pebble Beach in California and Las Vegas, Nevada. The expenses of such trips were paid by Gulf Oil Corporation. The even numbered counts, 2, 4, 6, and 8 charge these defendants with promising, offering and giving things of value to wit: the same vacation trips to a supervisory internal revenue agent in violation of 18 U.S.C. § 201(f) and 18 U.S.C. § 2.[2]

The only variation is that count 1 only charges payment of the balance due on the motel bill at Pompano Beach. (Gulf Oil did not pay for the transportation. Niederberger was in Florida on business.)

Previous to the case being called for trial Gulf Oil Corporation pleaded guilty and was sentenced and Fitzgerald pleaded nolo contendere and was sentenced after the trial.

Standefer went to trial on November 28, 1977, and on December 8, 1977, after a trial requiring eight trial days was found guilty by the jury on all counts. He has now filed motions for a new trial or in arrest of judgment alleging in the original motion 22 reasons and in a supplemental motion timely filed 3 additional reasons for new trial or arrest of judgment. The parties have thoroughly briefed the questions involved, have orally argued the same before the court and the matter is now ready for disposition.

Prior to Standefer's trial, Niederberger had gone to trial before Judge Snyder of this court on similar charges particularly for accepting illegal gratuities from Gulf Oil Corporation in the form of these trips paid for by Gulf in violation of 7214(a)(2) and 201(g). Niederberger was convicted on certain counts and found not guilty on others, particularly, he was found not guilty of

counts in his indictment numbers 1 and 2 relative to the trip to Pompano Beach, Florida and also counts 4 and 6 relative to trips to Absecon, New Jersey and Pebble Beach, California. He was sentenced on March 29, 1977 and appealed his sentence to the Court of Appeals for the Third Circuit which on May 5, 1978, affirmed the same. See opinion in No. 77–1575 in the Court of Appeals filed May 5, 1978.

### (1) Facts.

The facts in this case have succinctly been set forth in the opinion of the Court of Appeals in the following excerpt from the Niederberger case (references as to the exact counts of the Niederberger case are omitted):

"The facts, briefly summarized, are as follows: During the period between 1971 and 1974, Niederberger was employed by the IRS in its Pittsburgh office as a large case manager. This position required Niederberger to supervise a group of revenue agents assigned to audit certain corporate income tax returns filed by Gulf. Among Niederberger's responsibilities were the development and final approval of the audit plan, which is a detailed outline of the specific procedures to be utilized during the course of a particular audit. During the development of an audit plan, Niederberger was empowered to make all final decisions regarding the scope and depth of the areas of corporate taxation which were to be reviewed in the audit.

"Further, in his position as the large case manager for Gulf, Niederberger had occasion to supervise the audits of Gulf's tax returns for the years 1960 through 1970, inc. Following the completion of a particular year's audit, representatives of

---

**2.** 18 U.S.C. § 201(f) "Whoever, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official; or"

18 U.S.C. § 2 "(a) Whoever commits an offense against the United States or aids, abets, counsels, commends, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal. (June 25, 1948, c. 645, § 1, 62 Stat. 684; Oct. 31, 1951, c. 655 § 17b, 65 Stat. 717)."

Gulf would confer with Niederberger's staff to discuss the tax adjustments which the revenue agents determined were required by the audit. In each instance Gulf agreed to pay the proposed additional assessment without resort to available administrative appellate procedures.

"During the same period that Niederberger was serving as the case manager for the Gulf audits, he accepted from Gulf—and at Gulf's expense—several golfing junkets at various resorts. More precisely, in January of 1973, Niederberger spent four days at the Doral Country Club in Miami Beach, Florida, in the company of Mr. John F. Fitzgerald who, at that time, was the Manager of Federal Tax Compliance for Gulf. Niederberger's entire bill was transferred to Fitzgerald's account, which was subsequently charged to Fitzgerald's American Express card.

"In August and September of 1973, Niederberger and his wife spent four days at the Seaview Country Club in Absecon, New Jersey, in the company of, among others, Mr. Fred W. Standefer, Gulf's Vice President of Tax Administration. The Niederbergers' expenses at Seaview were billed to Mr. Arthur V. Harris, who listed his billing address as the Gulf Oil Building, Pittsburgh, Pennsylvania.

"In April of 1974, Niederberger spent four days at the Del Monte Lodge in Pebble Beach, California, in the company of both Fitzgerald and Standefer. Again, Fitzgerald charged Niederberger's bill to his American Express card.

"Two months later, in June of 1974, Niederberger and his wife were guests of Fitzgerald for five days at the Desert Inn and Country Club in Las Vegas, Nevada."

In addition to the above recited facts, the evidence in this case also showed payment of bill of Niederberger's in Pompano Beach, Florida in 1971. It also showed that Fitzgerald had acted under orders from Standefer and that in addition while at the Desert Inn, in Nevada, Standefer caused Fitzgerald to pay Niederberger $200 in cash. It further appeared that Niederberger had been assigned in December 1973 to investigate political contributions made by Gulf Oil routed through its subsidiary Bahamas Exploration Ltd., a Bahama Corporation. He had turned in a report in March 1974, just before the Pebble Beach outing recommending no further investigation of Gulf's contributions which it developed were much greater than revealed.

There was also testimony as to expensive Christmas parties and golf outings in the Pittsburgh area attended by Niederberger and other IRS agents.

In considering the evidence the court views it in the light most favorable to the government. *Government of the Virgin Islands v. Peterson*, 507 F.2d 898 (3d Cir. 1975).

The court holds that on the basis of the above facts there was sufficient evidence before the jury to convict the defendant beyond a reasonable doubt of the offenses with which he was charged and that the entire matter including his intent was for the jury to decide. This disposes of reasons 1 and 2 in the motion for new trial or in arrest of judgment.

Having thus determined that there is sufficient evidence generally to justify the conviction, we will now turn to the detailed reasons given for arrest of judgment and/or for new trial.

(2) Aiding and Abetting—Acquittal
of Niederberger
Reasons Nos. 3, 4, 5, and 6.

As previously noted, Niederberger was acquitted on counts 1, 2, 3 and 4 of his indictment and defendant contends that his conviction on counts 1, 3 and 5 of the instant case cannot stand because the only person he could have aided and abetted under 18 U.S.C. § 2 was Niederberger who was acquitted of these charges.

This same matter was raised by the defendant in a motion to dismiss, the argument being made that there is a logical inconsistency in convicting Standefer of aiding and abetting Niederberger in the

receipt of illegal gratuities under 26 U.S.C. § 7214(a)(2) when Niederberger was acquitted of these charges.

It should be obvious of course that juries' verdicts need not be consistent. It is no grounds for acquittal that a defendant is acquitted on certain charges and convicted on others when he logically might have been convicted on all of them. It is the jury's prerogative to make such determinations.

What this court said with respect to the motion to dismiss is apropos of the same argument which is now presented here.

"The court holds that this is not grounds for dismissing Counts 1, 3 and 5 of the instant indictment. The Rule in this Circuit with respect to such matters was originally laid down in *U. S. v. Klass*, 166 F.2d 373 (3d Cir. 1948) with respect to charges of aiding and abetting wherein the court stated 'it is not necessary that the actual principal be tried or convicted *nor is it material that the actual principal has been acquitted.* The aider and abettor may be charged with the substantive offense and each participant must stand on his own two feet.'

"More recently this matter was considered by the court of Appeals for this Circuit in *U. S. v. Bryan*, 483 F.2d 88 (3d Cir. 1973). In that case, the co-defendant principal was acquitted because of lack of criminal intent but nevertheless it was held that the aider and abettor could be convicted. The court pointed out that a crime may be performed through the use of an innocent dupe. The court pointed out that semantic difficulties previously existing were eliminated from the Federal Criminal Code by the passage of 18 U.S.C. 2 which makes aiders and abettors punishable as principals. The court rejected the argument that an aider and abettor is guilty only if the principal is also convicted. The fact that the alleged principal may have been acquitted because of lack of criminal intent does not prevent the conviction of the aider and abettor. Another example would be where one entrusts the actual transportation of stolen goods across the state line to an innocent truck driver or bus driver who is unaware of the contents of a package entrusted to him. In such case the driver would be innocent because of lack of criminal intent but nevertheless the person who entrusted the goods to him and knew the contents of the package would be guilty as an aider and abettor and hence a principal."

We do not know on what grounds Niederberger may have been acquitted on counts 1, 2, 3, and 4. The jury may have determined that the evidence did not show willful intent on his part or may have concluded that the evidence as to these outings was insufficiently clear as furnishing a basis for conviction or for any other reason. This is no reason for acquitting Standefer of the charge of extending these gratuities and supplying these expensive golf outings to Niederberger.

It is obvious that 18 U.S.C. § 2 was passed to avoid some of the logical inconsistencies now raised by the defendant with respect to aiding and abetting. The purpose was to make it clear that a person who aided and abetted was a principal. The words are not merely aiding and abetting but the Act also covers counseling, commanding, inducing or procuring the commission of an offense and in subsection (b) causing an act to be done which if directly performed by him or another would be an offense against the United States.

For authority that the verdict of a jury need not be consistent and by the same token the verdicts of two juries except where the same person has been acquitted of the same offense in a prior trial in which case plea of once in jeopardy would prevent him from being tried again, see *U. S. v. Cindrich*, 241 F.2d 54 (3d Cir. 1957). The above also disposes of reason No. 6 of the grounds for new trial.

(3) Quid Pro Quo—Correctness of
Tax Returns
Better Working Atmosphere
Reasons 8, 9, 11, 16, 18, 20, 24 of
Motions for New Trial

■ The matters covered by these grounds for new trial were raised to a con-

siderable extent by the defendant in motion to dismiss for failure to allege facts constituting a criminal offense which was denied prior to trial. The defendant again seeks to confuse the gratuities section of 18 U.S.C. § 201(f) with the bribery sections 201(b) and 201(c)(1). The court at that time agreed with Judge Snyder's ruling in the Niederberger case to the effect that a specific quid pro quo need not be shown and that all that need to be shown was that the agent accepted, received or agreed to receive something of value for or because of an official act to be performed or to be performed by him and it was for the jury to determine whether the trips and other gratuities were things of value received by him by reason of official acts.

Such instructions were affirmed by the Court of Appeals in *U. S. v. Niederberger,* supra, where the court held that the statutes in question 18 U.S.C. § 201(g) (which is similar to § 201(f)) and 26 U.S.C. § 7214(a)(2) proscribe the receipt by a public official of a gratuity *except where specifically permitted under the law for the performance of an official act or duty.* It was argued that it must be shown that the agent received the golfing trips or outings in return for some specific identifiable act which he performed or was to perform in the future. It was pointed out, however, that § 201(c)(1) provided for prosecution of a public official if he "corruptly . . . accepts, receives, or agrees to receive anything of value for himself . . . in return for: (1) being influenced in his performance of any official act." The court held it was clear that § 201(c)(1) required a quid pro quo but that § 201(g) did not. See *U. S. v. Brewster,* 165 U.S.App.D.C. 1, 506 F.2d 62 (D.C.Cir.1974). The same reasoning would apply to § 201(b) covering givers of bribes. The court further held it was unnecessary to prove that the gratuities received by a public official were in any way generated by some specific identifiable act performed or to be performed by the official and that a quid pro quo was simply foreign to the elements of a subsection (g) offense. It was sufficient that the gratuities to which he was not legally entitled

were given to him in the course of his everyday duties for or because of official acts performed or to be performed by him and where he was in a position to use his authority in a manner which could affect the gift giver. See *U. S. v. Alessio,* 528 F.2d 1079 (9th Cir. 1976). It was also specifically held that neither § 201(g) nor § 7214(a)(2) required an allegation or proof of a quid pro quo. In footnote # 10, the Court of Appeals pointed out that support of this conclusion was also found in citations involving an 18 U.S.C. § 201(f) offense (as does this case) the payment of a gratuity to a public official, citing *U. S. v. Alessio,* supra; *U. S. v. Umans,* 368 F.2d 725 (2d Cir. 1966) and *U. S. v. Irwin,* 354 F.2d 192 (2d Cir. 1965). The court then said significantly

> "It follows that if proof of a quid pro quo is not required under 201(f) it need not be established in a 201(g) prosecution."

By the same token the question of correctness of the tax returns filed by Gulf for these years as finally audited becomes immaterial as it might be under a § 201(c)(1) prosecution. This court consistently told the jury that we were not retrying the question of the correctness of these returns and that we were not retrying the whole case of the tax liabilities of Gulf for these years and whether Standefer had succeeded in influencing Niederberger to alter his reports was immaterial. The same is true of the argument in Reason 11 of the motion for new trial that the government had to show what year the gratuities were applied to and this also disposes of the defendant's argument that if his purpose was to create a better working atmosphere by providing these expensive junkets for the case supervisor, then he could not be guilty of a violation of the statute. See also *U. S. v. Cohen,* 387 F.2d 803 (2d Cir. 1967).

It is apparent from the above discussion and what the Court of Appeals decided in Niederberger ·that creation of a better working atmosphere by giving of expensive presents and trips to an Internal Revenue Agent is exactly what was proscribed by Congress in enacting these statutes.

At pages 18 and 24 of the court's charge, this court did leave to the jury the question as to whether these things were given to Niederberger by the defendant Standefer and by Gulf as a matter of friendship or for social purposes only. If so, then they should acquit the defendant. At page 24 the jury was told:

"On the other hand it is the defendant's contention that these trips and vacations were matters of friendship and social affairs *in accordance with the accepted practices in the industry and in business.*"

"Further his contention is that nothing was discussed on these trips concerning the audits or other business in the Gulf Oil Corporation.

"He contends that he was not knowingly engaged in giving Niederberger compensation not authorized by law for the performance or non-performance of any duty performed or to be performed in connection with the audit of these returns or aiding and abetting Niederberger in receiving compensation unauthorized by law for the performance of any duties.

"Defendant contends that he did not knowingly or willfully violate the law and does not believe he did so. He contends that he is not guilty of any of these charges."

The jury was told that if this was the purpose of the payment for these trips, then they should acquit the defendant. The jury apparently came to the conclusion that this was not the case and were justified from the evidence in making such a finding.

Under these instructions the court finds that it adequately presented defendant's contentions to the jury which if the jury had believed them would have acquitted him but the jury did not so find.

### (4) The Matter of Intent
### Reasons No. 7, 18, 19 and 20 of
### motion for new trial

In the 7th paragraph of the motion for new trial, the defendant contends the court erred that in denying defendant's request for instruction No. 9. Request No. 9 reads as follows:

"9. An essential element which must be charged and proved by the government beyond a reasonable doubt in all nine counts of the indictment is the state of mind of the defendant F. W. Standefer and as to this essential element it is necessary that the government prove beyond a reasonable doubt that Standefer acted with a *corrupt motive*, improper design, unlawfully, wilfully and knowingly. If you find that at the time the alleged acts were committed Standefer was misled by Internal Revenue Service regulations, failure of Internal Revenue Service officials to issue directives that entertaining Internal Revenue Service agents was improper or illegal, as well as the conduct of presidents, vice presidents and Congressmen and officials in other agencies of the government to accept trips and entertainment, then you could find that the defendant, F. W. Standefer, did not have the necessary criminal intent and therefore it would be your duty, as a juror, to find the defendant 'not guilty'. If you find that the government has proved this essential element beyond a reasonable doubt, then it would be your duty as a juror to find the defendant 'guilty'."

The vice of this instruction is that it demands that the government prove beyond a reasonable doubt that Standefer acted with a corrupt motive. It further goes on to discuss internal revenue service regulations or failure to issue regulations and the conduct of presidents, vice presidents and congressmen in accepting trips and entertainments. These latter matters will be dealt with later in this opinion and suffice it to say that the court determined that such matters were irrelevant to the guilt or innocence of the defendant and still adheres to that determination.

The government in its argument has well stated that these attempts by the defendant to interject the question of corruption into this case are misplaced and another illustration of defendant's attempts to twist and turn this case into one of bribery which it is not. Defendant persisted during the trial

of this case in confusing 18 U.S.C. § 201(f), the gratuities section with 18 U.S.C. § 201(b), the bribery section which prohibits the giving of value to a public official to influence any official act or to abet or aid in committing any fraud on the United States.

■ That corrupt motive does not enter into a prosecution under § 201(f) or § 201(g) it has been clearly held in many cases. See *U. S. v. Barash*, 412 F.2d 26 (2d Cir. 1969) where the court said:

> "Although criminal intent is a necessary element for conviction under the gratuity counts, no specific intent is required. In this case, accepting Barash's version of the facts, the payments were received by auditors 'otherwise than as provided by law for the proper discharge of official duty,' as provided for in § 201(b). In measuring intent, it matters not whether the payments were made because of economic duress, a desire to create a better working atmosphere, or appreciation for a speedy and favorable audit."

(Footnote 7 in *Barash* points out that substantially identical language is contained in § 7214(a)(2). The court further said

> "The concluding point for our consideration is Barash's contention that it was error to submit to the jury the counts under 18 USC former § 201 as well as the counts under 26 USC § 7214(a)(2), thus permitting the jury to convict on both counts. In the recent decision of *U. S. v. Cohen*, 387 F.2d 803 (2d Cir. 1967), we made clear the differences in the requirements for conviction under these sections:
>
> "The aiding and abetting counts, unlike the bribery counts, require proof that the Internal Revenue Agent received a fee, not prescribed by law, for the performance of his duty. The bribery counts, unlike the aiding and abetting counts, require proof of a specific corrupt intent to influence official action. From a time standpoint alone, bribery required that money be given or promised with the intent to influence an official's decision before that decision is reached. id. at 805."

Again, in *U. S. v. Alessio*, supra, the court said:

"In *U. S. v. Barash*, 412 F.2d 26 (2d Cir. 1969), cert. denied, 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969), the Court of Appeals for the Second Circuit held it was a violation of Section 201(f) for a tax attorney representing clients in audits before the Internal Revenue Service to make payments to tax auditors, 'whether the payments were made because of economic duress, a desire to create a better working atmosphere, or [in] appreciation for a speedy and favorable audit.' 412 F.2d at 29. Clearly, the intent necessary to establish a violation of this section may be present whether or not there was an agreement between appellant and Santiago regarding particular acts Santiago had performed or would perform. To support the jury's verdict the evidence must show that something of value was given 'a public official . . . for or because of any official act performed or to be performed by such public official . . .' 18 U.S.C. § 201(f). An '"official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in his official capacity, or in his place of trust or profit.' 18 U.S.C. § 201(a)."

In reason No. 18 which has already been dealt with, defendant states: "The court in stating that intent may not be proved directly but may be proved by surrounding circumstances called to the jury's attention a proper factfinding function". It then goes on to claim that the question of the audits should however be considered in relation to the question of intent. This has already been dealt with.

■ In reason 19 the defendant complains of the action of the court answering a question by the jury during deliberations. The jury question read as follows:

> "Is intent to be considered in any of the nine counts. Thank you."

The defendant contends that the court should simply have answered "Yes". This

overlooks the fact the question asked whether intent was to be considered in *any* of the nine counts. To have simply answered "Yes" would have left the jury mystified as to which of the nine counts intent applied to. The court therefore went on to review the prior instructions in the main body of the charge with respect to intent as follows:

"With respect to each of these counts, it is necessary that you find that the defendant did intend to give gratuities or vacation trips or what-have-you to Niederberger for the purpose or because of an official act to be performed—performed or to be performed by Niederberger and as I have told you, it is necessary that you find that he did this not inadvertently or negligently or by reason of mistake, but intending to give these things to the Internal Revenue Agent for or because of official acts.

"For instance, with respect to the 201(f) charges, I told you it was necessary for the government to prove that the defendant committed the act of giving, offering or promising knowingly and purposefully and not through misunderstanding, inadvertence or for some other innocent reason, and that the gift was with the purpose or state of mind of giving a thing of value for or by reason of the official act performed or to be performed by the agent; and I told you on the other hand that if this had nothing to do—if giving these gratuities had nothing to do with the giving of things of value to a public official, but on the contrary were given as a matter of friendship and for social purposes only, then you should acquit him; and this is the thing you have to decide. This is a very difficult thing and it is an important thing; and in these cases, with respect to all of these counts, for the reason that I told you, intent is something that you can't prove directly. Someone said they would have to crawl into somebody else's mind, and of course, we know we can't do that, and there is no way of even putting a machine on somebody else's mind and finding out what he intends.

"But what we say is it need not be proved directly, but you may infer a defendant's intent from the surrounding circumstances, and therefore you may consider any statements made or done or acts committed or all the other facts and circumstances of the case in trying to determine what was his intention, what was his purpose to do by extending these gratuities, if you find that he did.

"We further told you on the other charge that you had to find that he did these acts willfully or knowingly, willfully and purposely, and not because of mistakes, inadvertence or accident; and I think that is the problem."

After this was done, the foreman asked another question (p. 48):

THE FOREMAN: The only other question, Your Honor, that I may bring up that could be in some of the people's mind, and yet we haven't discussed it, is, there was a point that was brought up, if I remember correctly, and this is in relation to the defendant's intent.

If there is any doubt whether the intent was there or not, in other words, in so many words, if you are not sure one way or the other, then you are supposed to give your attention towards the acquittal?

THE COURT: Well, that's what I said early in my charge, that if you consider that the evidence permits either of two conclusions,—

THE FOREMAN: Right.

THE COURT: —why, then the government has not proved its case beyond a reasonable doubt.

You have got to determine that the government has proved beyond a reasonable doubt that these gratuities, vacation trips and what have you were extended for the purpose or on account of the official acts to be performed by the defendant, and not on account of friendship or for mere social purposes.

THE FOREMAN: Thank you, sir.

THE COURT: That is the crux of the matter, what was the purpose in doing this?

MR. MC KAY: Your Honor, could I approach sidebar?

THE COURT: Yes.

(At sidebar, out of the hearing of the jury)

MR. MC KAY: Your Honor, I think the jury must be informed that if the intent is to relax business atmosphere or good will, that this is a sufficient intent in the 201(f) counts. I think that is confusing. I think also the official act, it must be stated that the official act is the audits.

MR. GONDELMAN: You have said that already, Your Honor. I object to the repeating.

THE COURT: I have said that.

MR. GONDELMAN: Thanks.

(In open court)

THE COURT: It has been suggested that I should inform you, and I think I have, I think you all understand, that the official act we are talking about here is the audit of the Gulf Oil Corporation returns in which this man was the Large Case Manager.

On the other hand, I have also pointed out to you that these statutes do not require that corrupt intention which goes for bribery case; and further I informed you that it is sufficient if these payments were paid for any reason in connection with the audit, because of a desire to create a better working atmosphere, or appreciation for a speedy and favorable audit, and that any of these would be purposes that whether the returns were correct or not is not relevant in this case. But it has to be for the purpose of giving these things to the agent on account of the audit of these returns and his position with respect thereto.

All right, the jury may retire for further deliberations.

In view of the fact that the jury had focused on this particular aspect of the case, it was the feeling of the court that it was entitled to have the instructions on this questioned reviewed at some length so as to give a complete answer to the question. The court finds no abuse of discretion in doing this.

This also deals with reason No. 20 with respect to the proof of intent by circumstantial evidence where again the court repeated that intent may be determined from all the facts and circumstances of the case which the defendant in reason No. 18 of the reasons for new trial concedes was proper.

(5) Activities in the Open.
Reason No. 10.

██ In reason 10 of the motion for new trial defendant argues that the court erred in refusing No. 10 of defendant's requests for instructions that the jury should consider the fact that the defendant engaged in activities with respect to Niederberger in the open and in public places and that this therefore negates any evidence of wrongdoing or concealment. The point in question is as follows insofar as pertinent here:

"I charge you that as a part of circumstantial evidence you may find the defendant F. W. Standefer lacked criminal intent by reason of fact that the entertainment of the alleged principal Cyril J. Niederberger was done openly and in public places. Which factor you may find negates any evidence of wrongdoing or concealment."

The motion as filed refers to the fact "Since clandestine meetings are argued by the government and given in instructions by the court to juries as evidence of guilt". The defendant has not pointed out in his brief any place where in this court's charge such an instruction was given to the jury. If such an instruction had been requested, it would have been refused as argumentative and for the same reason, defendant's request No. 10 was refused. The parties were permitted to argue such matters to the jury but the court considers it wrong for the court to engage in such arguments in the court's charge. If the court were to have given such an instruction it might well have been followed with the caution "of course, it has often been said that no one is so alone as in a crowd" referring to the fact that in the presence of a crowd of people a certain defendant may appear anonymous.

(6) Affirming Government's Additional
Point No. 1.
Reasons 12, 23 of reasons for new trial

The court did go over on the day before the requests for instructions to the jury as filed by both parties and announced its proposed action thereon in accordance with Rule 30. The government particularly was told to take its requests back and put them in proper form since what had been submitted was a copy of its requests for charge in the case of *U. S. v. Niederberger,* supra. This the government did and the next morning submitted revised requests for charge. There was also submitted an additional point No. 1. This the government counsel had given to defense counsel in advance of argument (See pp. 36, 37, Tr. of Charge) and defense counsel made no request for further information from the court as to its proposed disposition of point 1. It has been held that a failure of the court to inform counsel before argument of action on written request is harmless if counsel makes no request for the information. See 1 Devitt and Blackmar, Fed. Jury Prac. and Instructions § 7.02. In any event the court did not give new point No. 1 as requested but instead gave it with a modification as set forth at page 27 of the transcript of the charge as follows:

"The first will be affirmed with a modification. If you find beyond a reasonable doubt that the defendant committed each element of the offense charged, then you may find the defendant guilty. You may so find even though you also find that such evidence is widespread in the industry, where industry custom and practice cannot serve to repeal the criminal law. That point is affirmed with the modification, *that these facts may be considered by you in determining what were his motives or purposes in connection with these matters.*"

It will be noted that the modification was that these facts (evidence that the practice was widespread in industry) may be considered by a jury in determining the motives or purposes of the defendant. This gave the defendant perhaps more than he

was entitled to since it permitted the jury to consider the evidence which had crept into the case that entertainment of government agents was a widespread practice and at one point the defendant himself had blurted out on the stand that presidents and congressmen did not hesitate to accept such entertainment. The result is that with the modification the jury had the position contended for by defendant before it. As a matter of fact this had already been conveyed to the jury on pages 24 and 25 of the main charge where it was stated that "It is the defendant's contention that these trips and vacations were matters of friendship and social affairs in *accordance with the accepted practices in the industry and in business.*

It has been pointed out that Professor Moore (8A Moore's Fed.Prac. 30.03(2) 1976) has stated with respect to failure of compliance with Rule 30 that ". . . denial of rulings can constitute reversible error only if counsel shows some way in which he was badly impeded or misled in making his summation." This the defendant has not shown. He did argue to the jury the matters covered by this point and the jury was told that they could consider these matters in determining the defendant's intent.

 It cannot be doubted that widespread violation of the law by others can furnish no excuse for a particular defendant ignoring the law since otherwise the law would be considered repealed by failure or inability of the government to enforce it in a large number of cases. It cannot be said that a public official who has accepted kickbacks from contractors doing business with the state or government can claim that this is a way of life in the United States today and thus have a jury acquit him. The most that can be asked is that the jury consider this along with the other evidence in the case in determining the defendant's intent and this the jury was permitted to do.

(7) Government's Instruction No. 12
Reason for New Trial No. 13

The court affirmed government's request for instruction No. 12 as follows (p. 26, Tr. of Charge):

"No. 12 will be affirmed. I charge you as a matter of law that the vacation trips the defendant gave, offered or promised to give are not authorized by law to be given to IRS employees for the performance of IRS duties. With a slight modification, it is affirmed."

The slight modification referred to was the insertion of the word "trips" after the word vacation.

Defendant complains that this was argumentative and should not have been given. The fact is that this is a correct statement of the law. There is nothing in the law which includes as compensation of an Internal Revenue agent golf outings at the expense of a taxpayer under audit. When taken in conjunction with the balance of the charge of the court summing up defendant's contentions with respect to the purpose of these trips it can hardly be said that the defendant was prejudiced in any way by giving this instruction or that the jury could have been misled.

### (8) Interference with Calling of Defense Witness.
### Reasons 14, 15 and 25.

In reason for new trial No. 14 the claim was made that the court erred in refusing to charge the jury that the agent Cyril J. Niederberger was available as a witness only to the government and not to the defendant and therefore the jury could draw unfavorable inference from the failure of the government to call him and claim is made that the court interfered with the calling of Niederberger when it did not require the government to ask immunity for him in case he should be called to testify as a defense witness. The defendant places reliance upon *U. S. v. Morrison*, 535 F.2d 223 (3rd Cir. 1976).

In *Morrison* it appeared that the government had improperly called a defense witness into an assistant U.S. Attorney's office and threatened her with prosecution under state law if she testified for the defendant. The witness did take the stand and testified as to certain matters and also claimed the protection of the Fifth Amendment and refused to testify as to others. The Circuit held this was an impermissible interference with the defendant's right to call witnesses in his favor and in view of the particular circumstances indicated that if the witness were called at another trial the government should be directed to apply for immunity for the witness or else dismiss the indictment.

In the instant case, nothing like this occurred. The defendant wanted leave to call Niederberger, the agent to whom the gratuities and outings were given as testified in this case, as a defense witness claiming he had exculpatory testimony to give with respect to Standefer, but the defense wanted the court to refuse the government leave to cross examine him as to his conviction and to require the government to grant him immunity if he was called. Niederberger never was called in this case and we are left in the dark as to whether he would or would not have claimed the protection of the Fifth Amendment if called. There is no evidence that threats were ever made to Niederberger informing him that he would be prosecuted if he did testify for the defendant. We do not know whether his testimony would have been exculpatory or not.

■ The court refused to limit the government in its cross examination of Niederberger and to require the government to forego its right on cross examination to ask him if he had not been convicted of a felony to wit receiving as a government officer compensation not authorized by law. This would certainly have affected his credibility and the court had no right to refuse the government the right to cross examine on such a matter. See Rule 609 Fed. Rules of Evidence.

■ Nor did the court have any right to require the government to apply for immunity for Niederberger. The record indicates that when this issue arose the court indicated that it could well understand that Niederberger's counsel might seek to have the government grant him immunity particularly in light of the fact that his appeal was then pending before the court of ap-

peals but the court held it had no power to require the government to apply for such immunity. See *U. S. v. Berrigan*, 482 F.2d 171 at 190 (3d Cir. 1973); *Earl v. U. S.*, 124 U.S.App.D.C. 77, 361 F.2d 531 (1966) (Opinion by then Circuit Judge now Chief Justice Burger).

The record also shows that when this request for the instruction in question was made at page 32, the court refused the request since Niederberger was no longer a government agent and hence was available to either party to be called. There is no showing that if called he would have taken the Fifth Amendment or that if he had testified he had any information of importance which would have exculpated Standefer or whether he might not on direct or cross examination have inculpated him.

■ The same is true with respect to the refusal of the court to limit cross examination of other internal revenue agents whom the defense proposed to call. The record shows that the defendant proposed to call these agents who had been discharged by the government as the result of their own participation in these matters and the government proposed to cross examine them as to whether or not they had been discharged. The court ruled that this was certainly proper cross examination to attack their credibility, to show that they had hostility towards the government as a result of their discharges. Certainly the court has no right to limit the government or any other counsel from cross examination of a witness to show hostility.

■ The defendant further claims he should then have been entitled to show that they were improperly discharged. The court ruled that he would permit redirect examination to show that the witnesses did not think they had properly been discharged but that we did not propose to open up the whole question of the reasons for discharge in each case, that this raised collateral matters and would unduly confuse the issues in this trial if we had to retry each one of their discharge cases. It is submitted that this ruling was proper under the Federal Rules of Evidence, Rules 403 and 611. The agents never were called as witnesses and hence we do not know what exculpatory testimony if any they might have given to help the defendant Standefer.

### (9) Duplicitousness

■ The defendant complains in reason No. 17 for new trial of the alleged duplicitousness of the counts in the indictment which alternate between charges of violation of 7214(a)(2) and 201(f) involving the same incidents. The question of duplicitousness was dealt with by the circuit in the opinion filed May 5, 1978 in the Niederberger case at page 7 and it is not necessary again to deal with this subject. These are separate statutes charging separate offenses in the disjunctive and the government was within its rights in filing separate counts as to these offenses and there is no reason why the jury could not convict on each one of these counts in view of the evidence presented.

### (10) Other Instances of Prosecutorial Misconduct and Grounds of Mistrial Reason 21

The defendant has filed a shotgun charge in paragraph 21 of his motion for new trial seeking to bring up all the alleged errors committed by the court throughout this lengthy and complicated trial. To the extent that these have been argued or briefed, the court has reviewed the same and it would appear that insofar as they have not already been dealt with in this opinion they did not rise to the magnitude of such prejudice to the defendant as to warrant mistrial and the court finds there was no abuse of discretion in its action.

An appropriate order will be entered denying defendant's motions.