UNITED STATES of America, Plaintiff,

v.

Richard V. SECORD, Defendant.

Crim. Nos. 88–0080–03, 89–0110.

United States District Court,
District of Columbia.

Oct. 17, 1989.

See also 725 F.Supp. 563 and 725 F.Supp. 567.

Reid Weingarten, Independent Counsel, Washington, D.C., for plaintiff.

Thomas C. Green and James Sharpe, Washington, D.C., for defendant.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., Chief Judge.

Re: *Defendant's Request for Discovery (Defendant's Pretrial Motion No. 12)*

Now before the Court is Defendant's Request for Discovery pursuant to the Fifth and Sixth Amendments to the Constitution, Federal Rule of Criminal Procedure 16 and the Supreme Court's decision in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The parties have extensively briefed the issues in greatest dispute, and the Court heard oral argument on September 29, and again on October 16, 1989. Meanwhile, the Government has delivered or agreed to deliver a great many of the documents and other tangible evidence sought by Defendant. This Memorandum primarily deals with those categories of documents identified in Defendant's request, but which the Government refuses to acknowledge as "material" to Defendant's case under applicable standards.

■ The standards themselves are well-established. Rule 16 and *Brady* entitle a criminal defendant to material or exculpatory evidence in the possession of the government. More specifically, Rule 16 requires the surrender of tangible evidence "material to the preparation of defendant's defense." Fed.Rule Crim.Pro. 16(a)(1)(C). This means that the Government should provide those documents which "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony or assisting impeach-ment and rebuttal." *United States v. Felt,* 491 F.Supp. 179, 186 (D.D.C.1979).

Under the somewhat narrower *Brady* standard, the Government may not suppress exculpatory evidence which is material to the issue of guilt or punishment. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Bagley v. United States,* the Supreme Court elaborated that

> evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Implicit in both the constitutional and the statutory standards is the concept of logical relevance. Obviously, any item should be turned over which bears on an element of the charges to be tried in the Defendant's favor, or is truly germane to some aspect of a reasonable defense.

■ To force disclosure by the Government, Defendant must offer more than mere conclusory allegations that the documents he seeks are material. *United States v. Cadet,* 727 F.2d 1453, 1466 (9th Cir.1984). Indeed, the evidence must not simply "bear some abstract logical relationship to the issues in the case.... There must be some indication that pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor." *United States v. Ross,* 511 F.2d 757, 762–63 (5th Cir.1975).

## I. THE GRATUITY COUNTS

■ In counts 17, 18 and 19 of the original indictment, Defendant is charged with conspiracy to give a gratuity to a government official, Lt. Col. North, the giving of a gratuity (financial assistance), and the giving of a gratuity (security system), respectively. These gratuities, the Government alleges, were given "for or because of any official act performed or to be per-

formed," as the relevant statute proscribes. *See* 18 U.S.C. § 201(c)(1)(A) (Supp.1989). In his Memorandum, Defendant states that "his recruitment and continued participation in the Iran–Contra initiative throughout 1984–1986 was totally unrelated to any gratuity...." Def.Mem. No. 12, at 5–6. To prove this, Defendant wishes generally to discover

> all the facts and circumstances surrounding General Secord's participation in the Iran–Contra initiative. Simply stated we must show why General Secord was recruited; how he was recruited; what he was asked to do; who authorized him to do it; who knew about it; and how they knew about it.

*Id. See generally* Def.Mot. No. 12, Categories F(2), K(4)–(20).

■ The Government makes the point, and it is well taken, that documents falling within these areas are not material to the gratuity charge. The Court agrees that the government documents detailing the Iran–Contra initiative will not assist defendant's case. The giving of a gratuity is an offense much different than bribery. The Government need not prove that the gratuity was given in exchange for any specific official act; there need be no "quid pro quo," as Defendant has argued. Rather, for the counts charging the actual giving of a gratuity, the Government must show that Defendant acted simply *because of* North's official position, in appreciation for their relationship, or in anticipation of its continuation.[1] For the conspiracy count, all the Government must prove is an agreement to effect the illegal gratuity, and some overt act. *United States v. Finazzo*, 704 F.2d 300, 305 (6th Cir.1983), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3543, 77

L.Ed.2d 1392 (1983). The Government's proof is in no way tied to any specific transactions.

This being the case, the reasoning behind Defendant's requests is misguided. Defendant argues that high government officials were involved in his recruitment, that they approved his activities, and knowing this, Defendant had no reason to thank Lt. Col. North, or to thank him to the exclusion of other officials. Defendant also asserts that revenues derived from the sale of arms to Iran funded other covert operations, apparently to argue that he therefore gained no real profit himself. Finally, Defendant claims that the papers and diaries of the President will confirm that his activities were approved and legitimate.

■ These contentions really have no relevance to the gratuity charges. First and most generally, as laid out above, the specific details of the Iran–Contra initiative do not affect Defendant's guilt or innocence under the charges. The focus of the statute is simply *not* on any particular transactions or dealings. Second, to the extent that section 201(c) requires a showing of some official dealings or relationship, and here the Government intends to cite Iranian and Contra arms transactions, the legitimacy of those dealings is utterly irrelevant to whether Defendant gave a gratuity "because of" North's official position and ability to refer such deals to Defendant.[2]

As for Defendant's claim that he didn't "thank" other officials with whom he dealt, that too has no bearing on his relationship with North. The issue to be tried is whether Secord gave North things of value because North held the position that he did.

---

1. *See, e.g., United States v. Evans*, 572 F.2d 455, 479 (5th Cir.1978); *United States v. Crutchfield*, 547 F.2d 496 (9th Cir.1977); *United States v. Alessio*, 528 F.2d 1079 (9th Cir.1976); *United States v. Standefer*, 452 F.Supp. 1178 (W.D.Pa. 1978), *aff'd*, 610 F.2d 1076 (3d Cir.1979), *aff'd*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980).

2. Equally unfounded are Defendant's efforts to discover evidence related to other covert activities North referred to him. The Government has based the gratuity charges upon Secord's

and North's dealings only with respect to arms sales. An exploration of unrelated covert activities could not in any way assist Defendant in countering the Government's case against him. Defendant has stated only that evidence regarding these activities "will corroborate General Secord's contention that no illegal benefit was conferred on Lt. Col. North." Def.Supp.Mem. No. 12, at 5. Yet he declines to explain how this is so, and thus fails to demonstrate to the Court's satisfaction how the evidence is material to his defense.

The Court fails to see how Secord's relationship with other officials is helpful to the resolution of that issue.

With respect to the conspiracy charge under count 17, Defendant calls upon the Court to resolve whether the purpose of the alleged agreement was to "thank" North for past benefits conferred upon Defendant, or was to induce him to remain in his official position in the future. In the Court's view, the indictment and the gratuity statute contain elements of both purposes. The indictment's claim that Defendant conspired to provide a gratuity so that he and Hakim "would continue to receive opportunities for ... profits" references both past and future dealings. Again, the Government need only prove that Secord and Hakim agreed to provide the things of value because of North's official position, in appreciation of the relationship in the past, or in anticipation of future dealings. The Court rejects Defendant's efforts to tie the Government to but one of these possibilities.

In light of the above, the Court denies Defendant's requests for discovery, at least as they relate to the gratuity charges, into evidence held by the Government which bears on the details of the Iran–Contra initiative, Defendant's participation therein, the knowledge or approval thereof by United States government officials, including the former and current Presidents, and into other covert activities.

## II. THE PERJURY, OBSTRUCTION AND FALSE STATEMENT COUNTS

■ With respect to these charges, Defendant asks the Court to adopt the reasoning of Judge Harold Greene in granting Admiral Poindexter discovery into government documents related to the Iran–Contra initiative and its approval by government officials. *See United States v. Poindexter*, 727 F.Supp. 1470 (D.D.C.1989). Poindexter, like Secord, is charged with obstruction of Congress and making false statements. The rationale for discovery into such materials was that they bear on Admiral Poindexter's motive to conceal, the specific intent required under the obstruction and false statement charges, since they could show that he believed his activities to be lawful. As Judge Greene noted, "[e]vidence regarding the absence of motive is usually admitted to negate specific intent." *Id.* (citing, *inter alia, United States v. Whitman*, 771 F.2d 1348, 1350–51 (9th Cir. 1985)).

Although the Court believes that this rationale has some application to Defendant's situation, certain factual distinctions call for a more limited discovery order. General Secord's involvement in the Iran–Contra initiative was much different than Admiral Poindexter's, at least with respect to knowledge of the intimacies of United States policy. Poindexter participated in the formulation of that policy. He was quite familiar with Iran–Contra related correspondence and memoranda, some of which he would have authored or contributed to himself. It may also be that he had personal knowledge of the extent of understanding that other officials had, including the President and then-Vice President, with the details of Contra aid, Iranian arms sales, and the relationship between the two.

Secord on the other hand, while clearly involved and a primary participant in the execution of the policy, played little or no part in its formulation. As a practical matter, Secord's beliefs as to the legality of his activities or of the Enterprise, so far as the Court can tell, came not from personal knowledge of the approval of White House officials. Rather, Defendant dealt with a contact or contacts in the executive branch, primarily Lt. Col. North but perhaps others. These contacts were Defendant's "ear" into the White House and indirectly, Congress, unlike Admiral Poindexter who was on the scene himself. This happens to be a distinction with a difference: The subjective state of mind which Defendant Secord wishes to prove could have arisen *solely* from conversations in which he participated, correspondence which he himself read, meetings which he himself attended. To affect Defendant's state of mind, his specific intent, a piece of information must have been perceived by him *personally*, or been conveyed to him via his contacts in the Executive Branch.

Thus, the content of meetings or correspondence originally unknown to Defendant would become relevant if subsequently communicated to Defendant somehow. The point is simply that Defendant's state of mind can come only from what he hears or sees. Defendant is entitled to discover materials which evidence his personal knowledge about or belief in the legality of the Enterprise. This would include, for example, a conversation between Defendant and someone else, or a letter to Defendant, which indicated to him that he was acting legally as a participant in the Enterprise. Conversations or correspondence which never reached Defendant in any manner, however, remain immaterial to motive.

Though it remains to be seen, the Court suspects that the logic of this limitation does away with a great deal of Defendant's intended discovery. To take the most notorious example, Defendant has asked the Government to provide him with

> [a]ll notebooks, diaries, time logs, telephone logs and other documents relevant to the allegations of the Indictments which refer, reflect or relate to the activities of Admiral Poindexter, Lt. Col. North, the President, the Vice–President, William Casey, Colin Powell, George Schultz, Donald Regan, Robert C. McFarlane and any other government official representative or agent.

Def.Mot. No. 12, at 8, Item F(9). The bottom line is that if at the time of his testimony before Congress, General Secord had no knowledge of the contents of these materials, they have nothing whatsoever to do with his state of mind or his intent. They are absolutely meaningless for the purposes of divining Defendant's motives before Congress. Defendant may well respond that he did have some indirect knowledge of these materials, because someone like Lt. Col. North told him about them. If

true, Defendant is entitled to discover documents the Government has which evidence that conversation with Lt. Col. North. The materials themselves remain irrelevant because they themselves did not influence Defendant's state of mind—only what was relayed to him *about* the materials could have that consequence.[3]

The accompanying discovery Order, therefore, requires the Government to provide Defendant with material tangible evidence in its possession that memorializes meetings or other conversations in which Defendant took part, as well as any correspondence or other writings which he read, prior to his testimony before Congress. As the Court has made clear, the evidence is material if it contains information which bears upon Defendant's belief in the legality of the activities about which he testified, or could reasonably lead to the discovery of such information. Such information would include, for example, statements made to Defendant in one form or another, indicating the knowledge or approval of officials within the executive or legislative branches of government.

## III. OTHER DISPUTES

### A. *Notes from Defendant's Interviews*

There appears to be no real dispute about these materials. The defense asks for, in addition to FBI 302 reports of Defendant's oral statements to law enforcement officials, "all notes and memoranda" of his interviews with the Office of Independent Counsel "that have not been recorded and fully transcribed." Def.Mem. No. 12, at 14. The Government responds that it has surrendered all 302 reports. In addition, it states that "all interviews of Defendant by OIC were either transcribed or recorded in 302's that have previously been produced to defendant." Gov't Opp.

---

**3.** Defendant may also claim that even if he did not personally perceive certain government materials, they may corroborate those materials that do bear on his belief or knowledge. The Court likens this situation to a hearsay inquiry. The materials that are relevant to Defendant's state of mind are made no more credible by corroboration. They would not be offered for

the truth of the statements contained in them, but rather to demonstrate Defendant's reasonable belief. Whether or not Cabinet members actually knew of and approved Defendant's activities is inconsequential. The issue is whether Defendant *thought* that they knew or that he had their approval. Thus what matters is what Defendant was told, not what actually occurred.

No. 12, at 12. Thus, Defendant has asked for and received precisely what the Government has offered.

### B. *Government Witnesses and Exhibits*

The Court will merely confirm the Government's offer regarding Jencks Act and other materials. The Government shall provide Defendant with its witness list and Jencks Act material, as well as its case-in-chief exhibits at least two weeks prior to trial.

### C. *Brady Material*

General Secord asks for the immediate provision of all exculpatory material in the Government's possession. Given the rapidly approaching trial date, the Court agrees. To the extent the Government has not already fulfilled its obligations under *Brady* and Rule 16, it shall do so immediately.

## IV. CONCLUSION

According to the Government, a good deal of the materials identified in Defendant's request have been, or will soon be turned over. While perhaps the Court has added somewhat to the Government's burden today, the scope of Defendant's outstanding requests has been narrowed appropriately and should allow for any additional discovery without the threat of a trial delay. The Court commends the parties both for their genuine efforts to expedite discovery in this matter and for their thoroughness in presenting the more crucial issues to the Court.

An appropriate Order accompanies this Memorandum.

## PRETRIAL ORDER NO. 11

This Order addresses Defendant's Request for Discovery (his Pretrial Motion No. 12) and the Supplement thereto, seeking tangible evidence in the possession of the Government which, according to Defendant, has not yet been surrendered in accordance with the Government's obligations under Federal Rule of Criminal Procedure 16 and the Supreme Court's decision in *Brady v. Maryland,* 373 U.S. 83,

83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Upon consideration of the entire record in this matter, the hearings held by the Court on September 29 and October 16, 1989, and in accordance with the accompanying Memorandum, it is by the Court this 17th day of October, 1989,

ORDERED, that the Defendant's Request for Discovery be and hereby is GRANTED for the following Categories of tangible evidence not already provided, subject to the limitations indicated, if any:

1. Categories F(1), F(17), H, and K, to the extent that such documents or other tangible evidence are material to the issue of guilt, innocence or punishment, or would assist in the uncovering of admissible evidence, aid witness preparation, corroborate some aspect of Defendant's defense or assist impeachment or rebuttal of Government witnesses;

2. Categories F(2) (except Category F(2)(f)), F(3), F(4), F(6), F(12) and K; (except Category K(7)(f)); Supplemental Categories 2–9 (except Supplemental Category 3(f)) and 14, to the extent that the documents or other tangible evidence requested memorialize, quote, summarize or make reference to any conversation, meeting or writing which Defendant heard, saw, read or otherwise perceived before giving testimony before Congress, and in or at which the finances of the Enterprise or Defendant's relationship to those finances were discussed;

3. Category F(7), to the extent necessary to establish Lt. Col. North's operational and reporting responsibilities;

4. Supplemental Category 12; and it is

FURTHER ORDERED, upon the representations of the Government to the Court in its papers,

1. that Defendant's Request is now or shortly will be satisfied for the following Categories of documents or other tangible evidence: Categories A, B, C, D, F(5), F(8)-(11), F(16), F(18), G, I, J, L and O; Supplemental Categories 1, 11, 13, 15–17; and

2. that the Government shall provide Defendant with material tangible evidence

under the following Categories no later than two weeks prior to trial: Categories E, F(13)-(15), M, N and Q; and it is

FURTHER ORDERED, that Defendant's Request be and hereby is DENIED with respect to tangible evidence under the following Categories: Categories F(2)(f), K(7)(f) and P; Supplemental Categories 3(f) and 10.